RUFUS F. LAZZELL'S EXECUTORS, *etc.* *v.* WENONA E. LAZZELL *et al.*

*And*

WENONA E. LAZZELL *et al.* *v.* RUFUS F. LAZZELL, *etc.,* *et al.*

(No. 8470)

Submitted November 10, 1936. Decided December 15, 1936.

*Frank Cox*, for appellant.
*Jesse M. Jaco* and *Benjamin G. Reeder*, for appellees.

KENNA, JUDGE:

From a decree entered on the 10th day of June, 1936, in the consolidated causes of Rufus F. Lazzell's Executors and Executorial Trustees, plaintiffs, against Wenona E. Lazzell and others, defendants, and Wenona E. Lazzell and Benjamin G. Reeder, Committee of Rufus F. Lazzell, an insane person, and others, against Rufus F. Lazzell, an insane person, pending in the Circuit Court of Monongalia County, Wenona E. Lazzell prosecutes this appeal. Rufus F. Lazzell's executors assign cross-error.

No facts are in dispute, and from an extremely complicated and voluminous record, it is necessary to set forth only a few salient circumstances giving rise to the legal questions involved.

Wenona E. Lazzell and Rufus F. Lazzell were married on the 20th day of December, 1913. Rufus F. Lazzell made a will on June 16, 1919. He was adjudged insane on the 23rd day of May, 1928. In September, 1931, Wenona E. Lazzell and Benjamin G. Reeder, Committee of Rufus F. Lazzell, filed their bill in equity in the Circuit Court of Monongalia County for the purpose of seeking the aid of the court in the administration of his estate, and particularly to submit for the court's approval a lease covering 621 acres of Pittsburgh coal in Cass District, Monongalia County, in which Rufus F. Lazzell was the owner of approximately thirty-seven per cent. On Oc-

tober 10, 1931, the court entered its decree approving the lease upon a royalty of fifteen cents a net ton and directing that in consideration of her release of her inchoate dower, under the provisions of sections 4 and 5, article 2, chapter 43 of the Code, 11.9046 per cent of the amount of the royalties were to be paid to Wenona E. Lazzell as her absolute property. The court further decreed that for their services the committee should receive five per cent of the royalties, to be paid to Wenona E. Lazzell, Benjamin G. Reeder expressly waiving his right thereto and requesting that the entire commission be paid to Wenona E. Lazzell.

On the 21st day of October, 1933, Rufus F. Lazzell died. By his will he directed that one-third of the income of his estate be paid to his wife, Wenona E. Lazzell, for life with the further provision that his executors should realize upon the corpus of his estate for the purpose of keeping his wife's income at the figure of $3,000.00 per annum, at the least. Wenona E. Lazzell accepted the provisions made for her by the will.

After the death of Rufus F. Lazzell his executors and trustees entered upon another lease by which the royalty was reduced from fifteen to ten cents a net ton. Wenona E. Lazzell did not execute this lease.

Because of the necessity of selling a part of the decedent's real estate for the purpose of paying his debts, his executors instituted a suit in the Circuit Court of Monongalia County for the purpose of winding up his estate and settling their accounts. The bill was filed at July Rules, 1934. In this suit, Wenona E. Lazzell filed her answer and cross-bill alleging that the executors had refused to pay her the 11.9046 per cent and the five per cent of the royalties under the lease authorized by the decree entered October 10, 1931, and prayed that the court direct that these amounts be paid to her. It is from the decree directing that she be paid the five per cent commission on the basis of the second lease and refusing the prayer of her cross-bill as to the 11.9046 per cent of the royalties allowed in lieu of her inchoate dower in the interest of Rufus F. Lazzell in the Pitts-

burgh coal underlying the tract of 621 acres, that Wenona E. Lazzell appeals. The cross-error is directed to the allowance of the five per cent commission.

The questions for decision are whether Wenona E. Lazzell, having accepted the benefits of the will of Rufus F. Lazzell, can, under the provisions of Code, 42-3-2, at the same time retain the provision that was made for her in lieu of her inchoate dower, released when she joined in the first lease in question; whether the provisions of the will bar her right to the five per cent commission decreed her as Committee, and, if not, whether the lower court erred in fixing the commissions upon the royalty yielded by the second lease, instead of that yielded by the first lease, under which the allowance was made.

There is authority for the proposition that the wife cannot at the same time take dower in lands aliened by the husband in his lifetime without the release of her dower, and a provision under the husband's will intended in lieu of dower. *Palmer* v. *Voorhis,* 35 Barb. (N. Y.) 479. And by some of the holdings, the general warranty in the husband's grant emphasizes this rule. *Powell Lumber Co.* v. *Parker,* 105 Minn. 310, 117 N. W. 518; *Stokes* v. *Norwood,* 44 S. C. 424, 22 S. E. 417. We have been able to find no authority for the proposition that the acceptance by the wife of a provision made in lieu of inchoate dower surrendered by her during the lifetime of the husband would bar her from accepting the provision of the husband's will made in lieu of dower. Code, 42-3-2, provides that any testamentary provision for husband or wife shall bar dower and distributive share in the personalty of the deceased consort's estate, unless the contrary purpose clearly appears from a construction of the will and the attendant facts. In our opinion, the statute, in making provision for the election between dower and testamentary dispositions in lieu of dower, has in contemplation the estates that arise upon the death of the husband or wife, and not the avails of some right released by either during the lifetime of the other. Under the facts of the case before us, the wife has parted with her dower right and has received a com-

pensation not based upon the value of a vested estate of dower, but upon the value of only an inchoate right of dower. The election contemplated by the statute is an election between provisions of the will and dower—the vested estate. The word "dower" has a distinct technical meaning. The thing it describes is the actual ownership of property—a vested estate—nothing less. The mere expectancy of dower—the inchoate right—is something different. There can be no such thing as inchoate dower after the death of the husband, and we do not understand that the purpose of the statute is to deprive the wife of what she has received for the release of inchoate dower during the husband's lifetime. Supposing that the wife here had received a lump sum settlement for her inchoate dower at the time the land was aliened by the husband? Could it be successfully contended that she could not thereafter accept a provision under her husband's will? Certainly not. That would be to bind her by a blind election made in the husband's lifetime. The land aliened is beyond the reach of vested dower, and it is certainly not contemplated that the estate of the husband, if the wife elect to take dower, should be obligated to pay her the difference between the value of what she would already have received (the value of her inchoate right to dower) and the vested dower estate. Without that adjustment, the election would be plainly unfair. The statutes make no such provision, and to establish it as an equitable principle would be to substitute for actual and vested dower an inchoate right that was never intended to be considered.

It has long been the rule in Pennsylvania that a widow may take dower in lands aliened by her husband in his lifetime, and at the same time may take a testamentary provision made in lieu of dower. *Borland* v. *Nichols,* 10 Pa. St. 38, 51 Am. Dec. 576; *Gray* v. *McCune,* 23 Pa. St. 449. In *Higginbotham* v. *Cornwell,* 8 Gratt. (49 Va.) 83, 56 Am. Dec. 130, the Virginia Court of Appeals held that a wife could take dower in lands aliened by her husband in his lifetime by general warranty deed in which she did not join and at the same time could accept a test-

amentary provision. The result in that case, however, seems to have been reached on the ground that the testamentary disposition, in spite of the general warranty, was not intended in lieu of dower. This, of course, distinguishes it from the case at bar, as does the fact that in that case, the wife had not released her dower in the husband's lifetime, where here she had. In our West Virginia case of *Shuman* v. *Shuman*, 9 W. Va. 50, the same conclusion was reached in a similar case in spite of the fact that the opinion in the *Shuman* case recites that the bill of complaint of the wife specifically alleged that the testamentary disposition was intended to be in lieu of dower. But it is not necessary in this case for us to decide that the wife may accept a testamentary provision and also take dower in lands aliened by the husband, in the conveyance of which she did not join. The position might there be taken that the wife is dowable in such lands upon the husband's death and that therefore they would necessarily be included within the estate as to which she is required to elect. Where, however, the wife joins in the alienation made by the husband for the purpose of releasing her inchoate right to dower, the husband's estate upon his death is vested with nothing as to the interest alienated in which the wife can be dowable. Such interests are therefore not within the election that the wife is required to make between the estate of dower and the testamentary provision made for her. We are therefore of the opinion that the trial chancellor erred in decreeing that Mrs. Lazzell, having accepted the testamentary provision made for her in the will of Rufus F. Lazzell, her husband, was not entitled to the 11.9046 per cent of the royalties under the lease, and on this question, the decree is therefore reversed.

We are of the opinion that the trial court's ruling to the effect that Mrs. Lazzell was not debarred from accepting the commission provided for her in the decree of October 10, 1931, was correct. These commissions were in no sense an interest in which she was dowable, neither were they a distributive interest in her husband's estate.

We are of the opinion that the trial chancellor was correct, also, in decreeing that these commissions should be computed on the basis of the second lease reducing the royalty to ten cents a net ton, because the correct interpretation of the decree of October 10, 1931, we think, is that the commissions were not to be a specific sum of money in a fixed amount, but that they should be a percentage of the yield of the interests decreed to be leased. This is the only view that would be consistent with the nature of the contract and a due regard for the interests of the lunatic's estate. There is no charge in this record that the second lease was collusively entered into, or that it was made for any improper purpose in so far as the interests of Mrs. Lazzell were concerned. We must assume that the reduction in royalty was found by the court to have been for the best interests of the decedent's estate, and that since the commissions were fixed as a certain percentage of the royalty, that they were intended to be governed by the actual royalty received.

*Affirmed in part; reversed in part; remanded.*