# CHARLESTON.

ISAAC H. MOYER *et al. v.* STEWARD A. MARTIN *et al.*

(No. 5491)

Submitted February 2, 1926. Decided February 9, 1926.

1. EASEMENTS—*Mere Non Use or Intermittent Use of Way Given by Partition Decree Held Not to Extinguish Easement Granted; Use by One or More of Partitioners of Another Way Over Abutting Lands Owned by Stranger to Partition Suit Held Not Election to Use Such Route to Extinguishment of Way Granted by Partition Decree.*

Where a decree of partition awards to the partitioners a right of way for ingress and egress over and through the land as partitioned, by the most practicable way to the public road, the mere non use or intermittent use of a way through the lands partitioned by one or more of the partitioners, will not extinguish the easement granted by the decree; nor will the use by one or more of the partitioners of another way of ingress and egress over abutting lands owned by a stranger to the partition suit be an election to use that route to the extinguishment of the way decreed.   (p. 23.)

(Easements, 19 C. J. § 153.)

2. EQUITY—*Two or More Persons Having Common Right of Way May Unite in One Bill to Prohibit Others From Forcibly Closing it and to Require Removal of Obstructions Jointly Placed Therein, and Demurrer Thereto on Ground of Multifariousness is Not Well Taken.*

Two or more persons having a common right of way accorded to them by judicial sanction may unite in one bill to prohibit others from forcibly closing such right of way, and to require them to remove the obstructions to full use of the way jointly placed therein by them.   A demurrer to such bill on the ground of multifariousness is not well taken.   (p. 25.)

(Equity, 21 C. J. § 306.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc.   Not part of syllabi.)

Appeal from Circuit Court, Kanawha County.

Suit by Isaac H. Moyer and others against Steward A. Martin and others to compel the removal of an obstruction

across a road. Decree for the defendants, and plaintiffs appeal.

*Decree reversed; cause remanded.*

*Ellison & Ellison* and *B. T. Clayton,* for appellants.
*R. G. Kelly,* for appellees.

LIVELY, JUDGE:

This controversy is over an easement, a right of way, claimed by plaintiffs over defendants' lands and denied by defendants. Defendants caused the alleged right of way to be obstructed of free passage by placing a fence across the road; plaintiffs sued to compel its removal and to prevent other obstructions to free passage. Defendants denied that plaintiffs had such easement. Upon the pleadings and evidence the lower court decreed against plaintiffs and dismissed their bill; plaintiffs appeal.

In 1911, a partition of the land of Sarah Melton, deceased, containing about 65 acres, was had among her seven children and the heirs of one who had died; and the land was divided into seven parcels, in a chancery suit instituted for that purpose. The decree of partition provided that, "The said parties to this litigation shall have a right of way for ingress and egress over and through said lots of land by the most practicable way to the public road." Lot No. 1 was decreed to B. F. Melton and is now deeded to L. C. Massey, one of the plaintiffs; Lot No. 7 was decreed to plaintiff C. E. Melton and is now owned by him; Lot No. 6 was decreed to Mary Melton and is now owned by plaintiff Isaac Moyer who obtained his deed in 1923. These plaintiffs claim a right of way over Lots 2, 3, 4 and 5, the first two (Lots 2 and 3) of which were decreed to C. V. Melton and Syril Melton and are now owned by defendant Walter Hope, by deed of 1915; Lots 4 and 5 were decreed to W. Melton and J. S. Melton and are now owned by defendant Stuart A. Martin, by deed of 1912. The following map taken from the record will simplify the questions arising in the controversy.

Points A, B, C, D and E on the map are on a road designated by some witnesses as the "farm road" and by others as the "Coal Branch road", and is the right of way claimed by plaintiffs. It is shown that at point "A" this road intersects with a public street of Coal Branch Heights, adjoining property, which was laid off into suburban lots, which street is designated as Ballard Street, and which was in existence in the year 1904, or seven years before the partition. From point "E" a road designated by some of the witnesses as the "old road" runs down a steep and rocky hill, through lands belonging to a stranger to the controversy, to the county road; and this road is also known as the "brick yard road". The evidence shows that the brick yard way (which defendants contend is the way plaintiffs should travel) was there for many years prior to Sarah Melton's death, and was the way usually traveled by the Meltons to and from their farm. It is also in evidence that the road is very steep,—automobiles cannot go up it,—and it is difficult to drive a wagon over it. The evidence shows that the Coal Branch way claimed by plaintiffs was also used in going to and from the farm. Surveyor Sell made the above map from the partition map and from actual survey. Civil Engineer Moore says the road through the farm was easily followed by him. He filed a similar map. There is much controversy as to the extent of the use of the Coal Branch way before and since the partition. A hearse had been driven over it in recent years, cars came over it occasionally, and C. E. Melton had hauled over it bringing purchases to his home. We do not consider the controversy over the user of this way is of importance. It is enough to say that it was open and used (whether habitually or intermittently, is not material) until it was fenced up about five or six years prior to this suit, over protest, by defendant Martin.

The right of way decreed to the owners of the lots of land in the partition suit was sought to be identified and located by plaintiffs who proved by one of the commissioners of partition, the chain carrier, and the living Melton heirs (with the exception of Tom Melton) and perhaps others that at the time the partition was made all of the heirs met with the

commissioners and agreed that the right of way provided for in the report of the commissioners and carried into decree, should be the ''Coal Branch way'' as then located through the farm.  One commissioner first made an affidavit to that effect, but afterwards in his deposition stated that no such agreement was made in his presence, and Tom Melton, one of the heirs, denies that the right of way was thus agreed upon.  The preponderance of the evidence is in favor of the plaintiffs in that respect; but the circuit court apparently did not base its decree on whether or not the right of way was actually located upon the land, nor did the evidence of the extent of the user of the claimed right of way enter into the court's decision.  The case was disposed of upon the theory that plaintiffs and their predecessors in title were called upon to make an election as to which of the two routes they would select, namely, the ''brick yard'' route over the lands of others, or the ''Coal Branch way'' through the lots partitioned; and the court found that plaintiffs and their predecessors had elected to take the brick yard way; that by traveling that route habitually after the partition they had elected, and could not now change that election and now claim a right of way through the farm.  Abandonment by non-user of the easement, or loss by adverse holding of defendants for the statutory length of time, do not enter into the court's decree.  It is based solely upon the doctrine of election.  The court holds, in effect, that there were two ways open to plaintiffs and their predecessors, one down by the brick yard over the lands of others, and the other through the lands partitioned, and not having elected to take the way through the farm, but on the contrary, having elected to take the way through the lands of another, they have no right now to change their election, and consequently have lost their easement through the land partitioned.  Does the law sustain this holding?

It must be kept in mind that the easement through the farm is by grant.  The court in the partition decree gave to each partitioner a right of way over and through the lots by the most practicable way to the public road.  The right of way is not one of necessity which may be extinguished when

the necessity ceases by the acquirement of another equally convenient route or the purchase of other property which affords ready ingress and egress. An easement by grant is radically different from an easement by necessity. And it is universally held that mere non-user of an easement by grant however long will not extinguish the right, unless otherwise provided by statute or by provision in the grant itself. 19 C. J. page 942; *Warren* v. *Syme,* 7 W. Va. 474. But the rule that the right of way by necessity is extinguished when the necessity to use it ceases, has no application to ways acquired by grant. In such cases the owner of the easement may have one or more convenient ways of ingress and egress, but that fact cannot rob him of his grant. He has a right of way ''nominated in the bond''. He may use that way or not, as he chooses. Having once been granted to him, he cannot lose it by mere non-user. Jones on Easements, sec. 863. He may lose it by adverse possession by the owner of the servient estate for the proper length of time, *Bennett* v. *Booth,* 70 W. Va. 264; or by abandonment, not by mere non-user, but by proofs of an intention to abandon; or, of course, by deed or other instrument in writing. The use of the brick yard route over the lands of another by plaintiffs and their predecessors, whether that easement was acquired by purchase or by prescription, is not an extinguishment of the easement through the farm granted by the partition decree. *Parsons* v. *New York &c. R. R. Co.,* 216 Mass. 269; *Perth Amboy Terra Cotta Co.* v. *Ryan,* 68 N. J. Law 474; *Scott* v. *Moore,* 98 Va. 668. See *Town of Weston* v. *Ralston,* 48 W. Va. 170.

There was only one way through the lots as partitioned provided for in the partition decree, and the doctrine of election invoked by the trial court does not apply. There was no election to make. Had there been two or more ways granted in the decree only one of which was to be used, the parties would have been put to an election. The only thing left under the decree to be fixed by the partitioners was the ascertainment and location of a way *through the lots partitioned* of the most practicable way to the public road. By the use of the brick yard road plaintiffs did not ascertain or locate a way through the lots partitioned. The principle

relied upon by counsel for appellees, that an easement not definitely described once located by the dominant owner and used by him cannot be changed or relocated without the consent of the servient owner as exemplified in *Mary Helen Coal Co.* v. *Hatfield,* 75 W. Va. 148; 19 C. J., pages 972-3, and 9 R. C. L., page 792, does not apply, because the way through the farm was not located by the use of a way over the lands of another by plaintiffs and their predecessors in title. The only location of the way through the lots granted in the partition decree was that made by the partitioners and commissioners at the time of partition, a fact which seems not to have been considered by the lower court.

The decree is reversed and the cause remanded.

*Decree reversed; cause remanded.*

ON APPLICATION FOR REHEARING

NOTE:

An application for rehearing is based on the ground that the demurrer to the bill should have been sustained, and that defendants assigned as cross-error the action of the court in overruling the demurrer—a point of error not disposed of by this court. While no specific ground is set out in the demurrer, it is argued that the bill is multifarious because each plaintiff may have a different cause of action because of acts of his predecessor in title in abandonment of his right of way, or in electing to take a particular right of way under the partition decree. In determining the demurrer we look to the bill and exhibits alone, and cannot anticipate what defense may be interposed or what the evidence may disclose; and when we look to the bill we find that plaintiffs charge their ownership of their respective lots as partitioned, evidenced by deeds exhibited, and each claims the benefit of the right of way accorded in the partition decree, and each asserts that the right of way should begin at lot No. 1 and run thence through lots 7, 6, 5, 4, 3 and 2 to the public road at Coal Branch Heights; that this right of way is well marked and has been continuously used by them and the public for many years next preceding the suit; and that defendants have closed up the said right of way by a fence

across it and refuse to let plaintiffs pass over said right of way, to their irreparable damage. Plaintiffs are similarly situated, and claim the same right under the partition decree against two defendants who have jointly taken that right from each of them. A multiplicity of suits is avoided. The rule against multifariousness, though technical in some aspects, is governed largely by considerations of convenience of the courts and parties, and equity to the parties in the administration of justice. *Johnson* v. *Sanger,* 49 W. Va. 405; *Shafer* v. *O'Brien,* 31 W. Va. 601; *Oney* v. *Ferguson,* 41 W. Va. 568; *Arnold* v. *Arnold,* 11 W. Va. 449. The bill was not demurrable. The cross-assignment of error is not well taken.