451 S.E.2d 445

**Joseph ORLANDI, Deborah A. Orlandi Signorelli, Karen Orlandi Paterno, Michael E. Orlandi, and Joseph Orlandi, Plaintiffs Below, Appellants,**

v.

**Charles MILLER, Commissioner of West Virginia Department of Highways, and the West Virginia Turnpike Commission, Defendants Below, Appellees.**

**No. 22016.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1994.

Decided Nov. 23, 1994.

---

145

Arthur T. Ciccarello and Timothy J. La-
Fon, Ciccarello, Del Giudice & LaFon,
Charleston, for appellants.

Anthony G. Halkias and Joseph M. Brown,
Charleston, for appellees.

PER CURIAM:

This is an appeal by Joseph Orlandi, and
others, from the refusal of the Circuit Court
of Kanawha County to mandamus the appel-
lees, the Commissioner of the West Virginia
Department of Highways and the West Vir-
ginia Turnpike Commission, to institute con-
demnation proceedings against an easement
which the appellants claim was blocked when
improvements were made to the West Virgi-
nia Turnpike.  On appeal, the appellants
claim they have a clear legal right to the
issuance of the writ of mandamus, and they
pray that this Court reverse the decision of
the circuit court and direct the appellees to
institute the condemnation proceedings
which they seek.

The appellants, or some of them, own the coal, and the right to mine the same, under approximately 1,126 acres of hill land located in and around Bradford Hollow in Loudon District, Kanawha County, West Virginia. The appellants, Deborah A. Orlandi Signorelli, Karen Orlandi Paterno, Michael E. Orlandi, and Joseph Orlandi, obtained their interests by deed dated September 22, 1977, from their father, Joseph Orlandi, who shortly before, on July 12, 1977, had purchased the interests from the estate of William A. Bradford, Jr.[1] The deed transferring the rights from the Bradford Estate to Joseph Orlandi also conveyed an easement from the coal lands to the Kanawha River. The deed said that the grant was made:

> Together with appurtenances appertaining to the coal and the right to mine coal in and under the aforesaid ... land ...; including but not limited to, a right of ingress and egress in common with the party of the first part, its successors and assigns, from the hill land to the Kanawha River on that certain right of way reserved in the aforesaid deed from George S. Ladle, Administrator, with the will annexed of the estate of William A. Bradford, Jr., dated September 8, 1936, and of record in the Clerk's office in Deed Book 420, page 301.

The 1936 deed referred to in this paragraph had transferred away from the Bradford Estate a parcel of bottom land lying between the Kanawha River and the hill land underlaid by the coal which was subsequently conveyed to Joseph Orlandi. In transferring away the bottom land, it appears that the Bradford Estate intended to reserve an easement across the bottom land from the Kanawha River, for the 1936 deed from the Bradford Estate specifically provided:

> The grantors herein hereby reserve for the benefit of themselves, their heirs, devisees, grantees and assigns, a right of way fifteen (15) feet in width for a private road over and across the land hereby conveyed from Kanawha River to the land now owned by the grantors herein, lying back or south of the land hereby conveyed, as an appurtenance to said back land, the location of said fifteen foot right of way to be hereafter designated and fixed by the grantee herein, its successors and assigns, which shall have the right to use said fifteen foot road in common with the grantors herein, their heirs, successors, devisees, grantees and assigns, including the right to cross and recross the same, but not in such manner as to impair, restrict or interfere with the full and free use thereof by the said grantors herein, their heirs, devisees, grantees, successors and assigns, and so as to afford a crossing over the Chesapeake & Ohio Railway.

The controversy giving rise to the present proceeding arose when, in the course of renovating the West Virginia Turnpike and converting it to standards required for an interstate highway, the respondents, the West Virginia Department of Highways and the West Virginia Turnpike Commission, blocked a box culvert which ran through and under the original West Virginia Turnpike.

On June 6, 1984, the appellants, who claimed that they owned an easement which ran through the box culvert closed in the improvement of the West Virginia Turnpike, filed a petition with the Circuit Court of Kanawha County praying that the court issue a mandamus commanding and directing the appellees to restore the right-of-way which ran through the box culvert or, in the alternative, to institute an eminent domain proceeding to condemn the right-of-way.

In the course of the development of the action in the circuit court, it was shown that on April 6, 1956, the Bradford Estate had conveyed land to the West Virginia Turnpike

---

1. The estate of William A. Bradford, Jr., which has conducted business for many years, has had a number of managers. Initially, George B. Laidley served as its Administrator, C.T.A. He was succeeded by Bradford B. Laidley, Trustee, and he, in turn, was succeeded by the Kanawha Valley Bank as Successor Trustee. The deeds from the Bradford Estate referred to herein were executed by the manager in charge at the time of the deed. For simplicity's sake, this opinion will simply refer to the conveyances or deeds as having been made by the Bradford Estate.

As will be discussed further in note 3, *infra*, it is not clear whether, in transferring the Coal interests to the other appellants, his children, Joseph Orlandi retained an interest in the 1,126 acres of coal.

Commission over which the West Virginia Turnpike was built and across which the box culvert in issue was built. That 1956 deed specifically provided:

[T]he parties of the first part [the Bradford Estate] ... do hereby grant, convey, release and forgo unto the said party of the second part [the West Virginia Turnpike Commission], unless heretofore expressly reserved or excepted, all easements of way over, across, through, upon or under the lands hereby conveyed, and all rights and easements of access to and egress from said lands hereby conveyed....

It appears that this deed language interjected the question of whether the Bradford Estate, by executing this deed, transferred to the West Virginia Turnpike Commission the easement previously reserved in the 1936 deed. If it did effectively transfer that easement to the West Virginia Turnpike Commission, the Bradford Estate did not own it and consequently could not, and did not, transfer the easement to Joseph Orlandi by its July 12, 1977, deed, and if the Bradford Estate did not pass the easement to Joseph Orlandi, the other appellants, as grantees of Joseph L. Orlandi, did not receive it.

To complicate the matter further, the West Virginia Turnpike Commission, in the April 6, 1956, deed, specifically granted the Bradford Estate a right-of-way which was, at most points, twenty feet wide. It rather clearly appears that the box culvert which was closed during the widening of the Turnpike was located on this easement and that the twenty-foot right-of-way ran through the culvert.[2]

In the course of the proceedings in the case, the appellants essentially took the position that the fifteen-foot easement reserved by the Bradford Estate in the 1936 deed to the Bedford Land Company was not extinguished by the 1956 deed to the West Virginia Turnpike Commission and that, in truth, the 1936 easement ran over the course of the twenty-foot easement granted by the West Virginia Turnpike Commission to the Bradford Estate.

After conducting hearings in this case, the trial court found, among other things, that there was no record evidence to show that the fifteen-foot right-of-way was ever established or designated and that, as a consequence, the appellants did not acquire the right to the use of the box culvert through their predecessors in title. The court also concluded that, since the appellants did not acquire the right to use the box culvert, the Department of Highways and Turnpike Commission, in widening the Turnpike and eliminating the culvert, did not damage property rights of the appellants.

In the present proceeding, the appellants, while recognizing that the evidence relating to their property rights is conflicting, contend that the circuit court erred in not granting their petition for a writ of mandamus and in not compelling the institution of an eminent domain condemnation proceeding.

This Court has recognized that an agency of the State of West Virginia may be required by mandamus to institute eminent domain proceedings in order to ascertain just compensation for private land taken or damaged for State highway purposes. To be entitled to mandamus relief, the parties seeking such relief are not required to establish that they will ultimately recover damages in the requested condemnation proceeding. They must only show that they have suffered probable damage to their private property. *See State ex rel. Rhodes v. West Virginia Department of Highways,* 155 W.Va. 735, 187 S.E.2d 218 (1972), and *State ex rel. French v. State Road Commission,* 147 W.Va. 619, 129 S.E.2d 831 (1963), where it is stated in the single syllabus point that:

"If a highway construction or improvement results in probable damage to private property without an actual taking thereof and the owners in good faith claim damages, the State Road Commissioner has the statutory duty to institute proceedings within a reasonable time after completion of the work to ascertain damages, if any, and, if he fails to do so, after reasonable time, mandamus will lie to require the

---

2. It is not clear whether the box culvert was on the bottom land conveyed away by the Bradford

Estate in 1936, but it appears that the appellants are claiming that it clearly was.

institution of such proceedings." Point 1 Syllabus, *State ex rel. Griggs v. Graney, State Road Com'r*, 143 W.Va. 610 [103 S.E.2d 878].

It appears that in the present case the real issue is whether the appellants, through the July 12, 1977, conveyance from the Bradford Estate to Joseph Orlandi, acquired a right-of-way which was subsequently damaged or destroyed when the West Virginia Department of Highways and the West Virginia Turnpike Commission widened the West Virginia Turnpike and eliminated the box culvert which ran under it.

■ This Court believes that the appellants, in the proceedings before the circuit court, introduced evidence suggesting that they did have title to an easement across land over which the West Virginia Turnpike was ultimately constructed and widened. As previously indicated, the deed from the Bradford Estate to Joseph Orlandi dated July 12, 1977, stated that the Bradford Estate, in addition to transferring the coal under the 1,126 acres which was involved in the deed, transferred to Joseph Orlandi the appurtenances appertaining to the coal, "including but not limited to, a right of ingress and egress in common with the party of the first part, its successors and assigns, from the hill land to the Kanawha River on that certain right of way reserved in the ... deed from George S. Ladle ... dated September 8, 1936, and of record in the Clerk's office in Deed Book 420, page 301." A further examination of the facts presented shows that in the 1936 deed, the Bradford Estate expressly reserved for the benefit of itself and its grantees and assigns, a right-of-way fifteen feet in width across the land conveyed from the Kanawha River to the hill land under which the coal subsequently conveyed to the Orlandis lay.

The documents presented, however, raise the question of whether the 1956 deed from the Bradford Estate transferred to the West Virginia Turnpike Commission the fifteen-foot right-of-way reserved by the Estate in the September 8, 1936, deed and purportedly subsequently transferred to Joseph Orlandi by the July 12, 1977, deed.

In examining the April 6, 1956, deed language, this Court notes that by the language the Bradford Estate did grant and convey and release to the Department of Highways all easements across the lands conveyed and all easements from the lands conveyed, "unless heretofore expressly reserved or excepted."

The Court believes that this language is somewhat ambiguous. Although the Bradford Estate purported to convey away all rights-of-way over the lands conveyed and all rights-of-way to and from the lands conveyed, the transfer of easements is conditional and rather clearly does not cover easements "heretofore expressly reserved or excepted."

In examining the language of the 1956 deed, this Court notes that prior to the inclusion of the phrase "unless heretofore expressly reserved or excepted," there was language in the 1956 deed reserving and excepting certain mineral and subterranean rights, but it is not clear that those were easements or rights-of-way within the meaning of the phrase "heretofore expressly reserved and excepted." The inclusion of the language "heretofore expressly reserved and excepted", therefore, raises, in this Court's view, some ambiguity as to what the grantor intended. Did the Bradford Estate, as grantor, simply include the quoted language with the view that since nothing was excepted or reserved, it was conveying all its rights-of-way, or did the clause "heretofore expressly reserved or excepted" refer to the mineral and subterranean rights previously discussed in the deed or did it refer to express reservations or exceptions in prior deeds in the chain of title, such as the 1936 deed?

The law is rather clear in this State that where there is ambiguity in a deed, it is appropriate that it be construed. *See Hall v. Hartley*, 146 W.Va. 328, 119 S.E.2d 759 (1961); *Bennett v. Smith*, 136 W.Va. 903, 69 S.E.2d 42 (1952); *Meadow River Lumber Company v. Smith*, 126 W.Va. 847, 30 S.E.2d 392 (1944); and *Paxton v. Benedum–Trees Oil Co.*, 80 W.Va. 187, 94 S.E. 472 (1917).

In view of the ambiguity of the clause "unless heretofore expressly reserved or excepted" in the context of the totality of the

language in the 1956 deed, this Court believes that some construction of the 1956 deed from the Bradford Estate is required, and, in the absence of an appropriate construction of the 1956 deed, the Court cannot conclude that there was a sufficient basis for the trial court to rule that the Department of Highways and the West Virginia Turnpike Commission did not take or damage any rights of the appellants.

The Court notes that the trial court further found that there was no record evidence that the fifteen-foot right-of-way was ever established or designated.

This Court believes that a clear reading of the 1936 deed indicates that the Bradford Estate did intend to reserve and establish the fifteen-foot right-of-way.

■ The trial court apparently based its ruling on the evidence that the bounds of the fifteen-foot right-of-way were never laid out and that the right-of-way was never used. There was some conflicting evidence on this point. The evidence presented by the appellants essentially was that the fifteen-foot right-of-way ran over the twenty-foot right-of-way which was later described by, and specifically granted by, the West Virginia Turnpike Commission in the 1956 deed, and there was evidence that the twenty-foot right-of-way had been used. At any rate, there is law in this State that an existing right-of-way is not defeated by mere nonuser. *Wooldridge v. Coughlin*, 46 W.Va. 345, 33 S.E. 233 (1899). Additionally, as late as 1988, the Court indicated that while easements created equitably may be extinguished by acts including abandonment, easements by grant, such as the easement claimed in ·

the present case, may not. *See* note 5 of *Lyons v. Lyons*, 179 W.Va. 712, 371 S.E.2d 640 (1988), which cites *Moyer v. Martin*, 101 W.Va. 19, 131 S.E. 859 (1926).

Under the circumstances of the present case, the Court believes that it is appropriate that this case be remanded to the Circuit Court of Kanawha County with directions that the court, after affording the parties a reasonable opportunity to be heard, construe the 1956 deed from the Bradford Estate to the West Virginia Turnpike Commission to determine whether that deed did, in fact, extinguish or transfer away the Bradford Estate's easement reserved in the 1936 deed, and that after making such construction, the court rule whether the July 12, 1977, deed language purporting to transfer to Joseph Orlandi actually did transfer the easement reserved and excepted in the 1936 deed.

In the event the court concludes that the appellants, as the successors of Joseph Orlandi, do have an easement, the Court believes that it is appropriate, since the easement inevitably crossed the West Virginia Turnpike, either through the box culvert which was closed or at some other point which the Turnpike has blocked, that the West Virginia Department of Highways be directed to institute mandamus proceedings to insure that the appellants receive just compensation for the damage to their easement.

For the reasons state, the judgment of the Circuit Court of Kanawha County is reversed, and this case is remanded for further development in accordance with ·the foregoing.[3]

Reversed and remanded with directions.

---

**3.** The Court has been hampered somewhat in the analysis of this case by the fact that few of the actual deeds referred to were included in the designated and printed record presented to the Court. A barely legible entire copy of the 1956 deed was included, but for most of the rest the Court has had to rely on lengthy quotes provided by the parties.

It is not completely clear whether Joseph Orlandi, in transferring the 1,126 acre coal interest and appurtenant rights to his children by the September 22, 1977, deed retained an interest in the property for himself or whether he conveyed away all he owned. If he, in fact, retained an interest, and ·if it ultimately is decided that the

July 12, 1977 deed effectively transferred an easement, then Joseph Orlandi will be a proper party to any subsequent condemnation proceeding. If, in fact, however, he conveyed away all his interest to his children by the September 22, 1977 deed, he, of course, would not be a proper party to the condemnation proceeding. The Court notes that Joseph Orlandi owned a separate tract adjacent to the 1,126 acre coal tract, and it appears that he may be claiming an easement interest appurtenant to this tract. From the record presented to this Court, the Court cannot see how he has such an easement interest, but on further development of this case on remand it may appear that he has such an inter-

BROTHERTON, J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

est. If it does, and if that interest was damaged by the improvements to the West Virginia Turnpike, this Court believes that it would be appropriate for the circuit court to mandamus condemnation of that interest.