# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JAMES L. COSTER,**
**Plaintiff Below, Petitioner,**

**v.) No. 24-ICA-467**    (Cir. Ct. of Marshall Cnty. Case No. CC-25-2019-C-40)

**DENNIS WINGROVE, LISA WINGROVE,**
**RONALD K. LILLEY, SR., and HELGA M. LILLEY,**
**Defendants Below, Respondents.**

**FILED**

**November 13, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner James L. Coster appeals the October 30, 2024, order from the Circuit Court of Marshall County, which granted Respondents' Motion for Summary Judgment. The circuit court found that Petitioner was not granted exclusive use of the right of way. Further, the circuit court determined Petitioner abandoned and waived his right to enforce the prior orders. The circuit court ultimately held that the doctrine of laches barred Petitioner's complaint. Respondents, Dennis Wingrove and Lisa Wingrove, filed a response. Petitioner filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds there is error in the circuit court's decision but no substantial question of law and no prejudicial error. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal, in part, in a memorandum decision. For the reasons set forth below, the circuit court's decision is affirmed, in part, and reversed, in part.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner James L. Coster is an adjoining landowner with the Respondents, Dennis Wingrove, Lisa Wingrove, Ronald K. Lilley, Sr. and Helga M. Lilley. Their adjoining tracts are in Marshall County, West Virginia. There is no dispute regarding the chain of title. Petitioner acquired his land, the dominant estate, in 1996 and is the current owner of the Coster property that lies at one end of the disputed right of way. Respondents Dennis and Lisa Wingrove acquired their property, the servient estate, in 1998 by deed from the Lilley family, which lies on the left side of the disputed right of way. Respondents Ronald K. Lilley, Sr. and Helga M. Lilley own the land, acquired in 1997, on the right side of the disputed right of way.

1

The parties' rights to the disputed right of way arise originally from a 1958 deed where W.O. Logsdon and Lottie Logsdon conveyed approximately one hundred forty-one acres to Edward B. Coster and Anne Agnes Coster. The easement granted in the 1958 deed allowed the Costers a fourteen foot right of way over the property of Audley E. Lilley and Cecilia C. Lilley, running from the county road to the Coster property (hereinafter, Coster ROW). It further described the Coster ROW as "the road or way now used as a private way" and that the Costers were to erect a fence along the left side of the Coster ROW and the Lilleys were to erect a fence along the right side of the Coster ROW. Additionally, the deed granted the Lilleys the right to erect and maintain a gate at or near the county road.

In 1966, Audley Lilley filed a petition for an injunction against the Costers regarding their interference with his use of the Coster ROW. Audley Lilley asserted in his petition that the Costers claimed exclusive use and would threaten Mr. Lilley and his family when they used the Coster ROW.

Three arbitrators, by order on June 24, 1968, were appointed by the Circuit Court of Marshall County to review the covenants in the relevant deeds and to determine the following: (1) "[t]he width and location of the 'turnouts' mentioned in the deed for the right of way and filed in this suit"; (2) "[t]he period of time to be allowed for the defendants to complete the work on the right of way and completion date for said work"; (3) "[t]he placing of fences and location of gates along said right of way giving due regard to provisions contained in the deed for said right of way"; (4) "[t]he drainage location of ditches on said right of way."

After review of the deeds, the arbitrators made the following recommendations: (1) fences be erected no less than seven and no more than ten feet from the center line of the Coster right of way, with the Costers responsible for the fence on the right side and the Lilleys responsible for the fence on the left side; (2) three turnouts and two gates, on each side of the right of way; (3) any and all work on the right of way, maintenance excluded, to be completed in ninety days; and (4) the Costers and the Lilleys were restricted from unnecessarily damaging the road in the right of way or from blocking the right of way for more than five minutes in any one hour. The recommendations were accepted by the circuit court on July 11, 1968.

The order was modified on July 11, 1969, to amend the recommendation regarding the gates as the original deed only granted one gate and not two. The Costers and the Lilleys agreed to the terms. Neither party completed the fencing as recommended.

Respondents Wingrove began building their home in 2007. In 2008, Petitioner notified Respondents Wingrove, by letter, that the right of way was owned by the Costers and they were not permitted to tap into the water line located at the head of the right of way. Petitioner's concerns regarding the right of way grew as Respondents built a pole barn between 2013 and 2016 near the right of way, which increased Respondents' use of

the right of way. Petitioner's counsel approached Respondents with a use agreement for the right of way which permitted Respondents to use the right of way and required them to help maintain the right of way. Respondents did not agree to the use agreement citing the prior orders and their belief that they have "every right to go onto [the ROW]".

Petitioner filed the complaint in the instant matter on March 14, 2019, asking the circuit court to determine the interests of the Coster ROW. Specifically, Petitioner sought to prohibit Respondents Wingrove from using the Coster ROW and to enforce compliance with the agreed upon fencing requirements of the 1968 and 1969 orders. Petitioner subsequently amended the complaint to add Ronald K. Lilley and Helga M. Lilley as defendants.

Respondents filed a Motion for Summary Judgment on June 14, 2024, asserting that the prior orders do not provide for the maintenance of the fences and nothing in the record indicates that Petitioner was granted exclusive use of the right of way. Respondents argued that Petitioner's complaint is barred because Petitioner had abandoned the requirements of the prior orders and the doctrine of laches applies. Petitioner filed a Motion for Summary Judgment also.

Argument was heard by the circuit court on August 5, 2024, on the parties' respective Motions for Summary Judgment. On October 30, 2024, the circuit court issued an order granting Respondents' Motion for Summary Judgment. The circuit court held that the 1968 and 1969 Orders did not grant Petitioner exclusive use of the Coster ROW or prohibit the Lilleys or any subsequent title holder from using the Coster ROW. The circuit court noted that neither the 1968 order nor the 1969 order required either party to maintain the fences or the gate. The circuit court further found that the parties had willingly and intentionally abandoned the turnouts, fencing, and gate. Thus, the circuit court concluded as a matter of law that Petitioner had abandoned and waived his rights to enforce the prior orders and that Petitioner was barred by the doctrine of laches as Petitioner had failed to take any action to enforce the terms of the 1968 or 1969 orders for at least 10 years.

Petitioner appeals from this order.

## II. STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de* novo." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

## III. DISCUSSION

Petitioner raises five assignments of error alleging that the circuit court erred because: (1) the right of way is a "private way" and requires fencing as described in the deed covenants; (2) the 1968 and 1969 orders prohibited use of the right of way by a

subsequent title holder; (3) the "clear meaning" of the language in the 1968 and 1969 orders establish a duty on the parties to maintain the fences and gate; (4) Petitioner did not abandon or waive his right to enforce the prior orders; and (5) the doctrine of laches is not a bar to Petitioner's complaint.

On appeal, Petitioner argues that the covenants in the 1968 deed are intended to provide Petitioner with exclusive use of the right of way and the 1969 order requires compliance by the parties to maintain the fencing and gate. When rejecting Petitioner's claim, the circuit court emphasized that Petitioner did not take any action until filing the 2019 complaint and for fifty years was noncompliant with the 1968 and 1969 orders. The circuit court ultimately concluded that Petitioner's actions demonstrated abandonment and intentional waiver of his rights. Further, the circuit court held that Petitioner's complaint was barred by the doctrine of laches as Petitioner delayed seeking enforcement of the prior orders. We disagree.

Although we find that the circuit court committed error in concluding that Petitioner abandoned the easement and that laches barred enforcement, we do not find that these errors warrant reversing the circuit court order. The summary judgment order is affirmed because the record conclusively demonstrates that Petitioner was never granted an exclusive easement right under the deed.[1]

The task before us is to consider the meaning of the express grant as contained in the 1958 deed. The dispositive issue in the case is whether the easement granted an exclusive right to use the right of way and a corresponding duty to erect and maintain fences and a gate by the parties. When faced with the question of whether a legal instrument has conveyed a property right, a court's job "is to ascertain the true intent of the parties as expressed by them in the deed, lease or other written instrument under consideration." *Sally-Mike Properties v. Yokum*, 175 W. Va. 296, 300, 332 S.E.2d 597, 600 (1985) (quoting *Davis v. Hardman*, 148 W. Va. 82, 88-89, 133 S.E.2d 77, 81 (1963)).

In the present case, the intent of the grantor can be ascertained by review of the language from the deeds describing the Coster ROW. The easement provides that the parties have the right to erect fencing on both sides of the right of way and a gate at or near the county road. The deeds describe a right "for ingress and egress", without words of exclusion or reservation. Under West Virginia law, such grants are presumptively non-exclusive. See *Shepherd v. Yoho*, 210 W.Va. 759, 761, 559 S.E.2d 905, 907 (2001) ("It is

_____

[1] An appellate court may affirm a correct decision based on any grounds supported by the record, "regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." *Humphries v. Detch*, 227 W. Va. 627, 635 n. 10, 712 S.E.2d 795, 803 n. 10 (2011); Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005) (per curiam).

also a well-established principle of law that the servient estate owner has all the rights and benefits of ownership consistent with the easement including the right to continue to use the land unless there is an express reservation to the contrary.")(citations omitted). Further, the 1968 and 1969 orders recite the same requirements with the same language as agreed upon by the Costers and Audley Lilley. This language does not mandate that a fence was to be built and maintained or establish that exclusive use of the right of way was granted to the dominant estate owner. In fact, the arbitration recommendations that were incorporated into the 1968 and 1969 circuit court orders specifically prohibited either party from blocking the right of way. Such a restriction is not consistent with providing exclusive use to the dominant estate.

Petitioner argues that the 1968 and 1969 orders require a fence to be erected and maintained by Respondent for the purpose of providing Petitioner with exclusive use of the easement. However, Petitioner fails to recognize the permissive nature of the fencing requirement. Instead, Petitioner misinterprets the right to erect a fence as mandatory and the possibility for both sides of the right of way to be fenced as the intent to grant exclusive use. Nothing in the record supports Petitioner's argument.

We do not agree with the circuit court that the 1968 and 1969 orders required the erection of fences. However, we agree with the circuit court that the 1968 and 1969 orders did not grant Petitioner exclusive use of the Coster ROW.

Respondents Wingrove assert, notwithstanding that the fencing requirement is not mandatory, that Petitioner's noncompliance with the 1968/1969 orders constitutes abandonment of the terms. Relying on the definition of abandonment, Respondents Wingrove argues that the abandoned fence posts along the right-of-way and scattered remnants of fence posts serve as physical evidence of Petitioner's intent to abandon.

Respondents argue that they have used the Coster ROW since 1988 and the Coster ROW does not conform to the 1968 and 1969 orders. According to Respondents, there are no usable turnouts nor fencing on either side of the Coster ROW and no gate as described in the original grant language or the 1968 and 1969 orders. For nearly 26 years, Respondents maintain the condition of the fencing has remained the same and Petitioner has not taken any action to enforce the Orders in that time.

The circuit court, in addressing the abandonment claim, found that Petitioner had relinquished his right of interest because he did not take any action to comply with or enforce the terms of the 1968 and 1969 orders for nearly fifty years. The lack of action was determined by the circuit court to be evidence of abandonment and intentional relinquishment by Petitioner. The circuit court concluded that Petitioner had waived his right. We disagree.

In addressing the abandonment claim, it should be recognized that the disputed right of way is set forth in the 1850 deed as an express easement. Historically, an express easement is not extinguished by non-use. See *Wooldridge v. Coughlin*, 46 W. Va. 345, 345, 33 S.E. 233, 234 (1899) ("…but I do not see that such private right of way, once brought into being, could be defeated by simple nonuser."). Express easements by grant receive stronger protection against abandonment compared to other types of easements. "An easement by grant is radically different from an easement by necessity. And it is universally held that mere nonuser of an easement by grant, however long, will not extinguish the right, unless otherwise provided by statute or by provision in the grant itself." *Moyer v. Martin*, 101 W. Va. 19, 24, 131 S.E. 859, 861 (1926) (citations omitted). *C.f. Strahin v. Lantz*, 193 W. Va. 285, 456 S.E.2d 12 (1995) (recognizing that easement by grant is not abandoned by non-use, but holding prescriptive easement can be abandoned).

The lapse of time and intentional noncompliance are not sufficient to extinguish an express easement. Neglect may raise the inference of abandonment, but it does not rise to an affirmative act indicating clear intent to abandon. Further, the terms of the express easement were reflected in the 1968 and 1969 orders which arose from an enforcement action. Once incorporated into an order, the terms of the easement become subject to the principles governing the modification of final judgments. West Virginia has consistently emphasized the finality of court orders involving property rights.

Additionally, the circuit court found as a matter of law that Petitioner was barred from bringing any enforcement action as laches applies in the instant matter. The circuit court points to Petitioner's awareness of Respondents' use of the Coster ROW since 2008 and his delay in bringing any enforcement action against Respondents until 2019. We disagree.

"Delay alone does not constitute laches; it is delay which places another at a disadvantage." Syl. Pt. 3, *Carter v. Carter*, 107 W. Va. 394, 148 S.E. 378 (1929). Accordingly, "[l]aches is an equitable remedy which places the burden on the person asserting it to prove both lack of diligence by the party causing the delay and prejudice to the party asserting it." *Grose v. Grose*, 222 W. Va. 722, 728, 671 S.E.2d 727, 733 (2008). The record before us does not support such a finding.

Respondents had the burden to demonstrate that Petitioner's alleged delay was prejudicial, and they did not make that showing. The parties were actively using the Coster ROW, and no evidence of obstruction or interference is indicated in the record. Further, no prejudice is asserted or included in the record. Delay in filing the enforcement action is the only factor asserted in the record. Therefore, the doctrine of laches does not apply to this matter.

## IV.  CONCLUSION

In view of the foregoing, the record before us adequately demonstrates that the Petitioner was never granted an exclusive right of way, as the deed language conveys a shared easement which was incorporated in the 1968 and 1969 orders. The circuit court correctly granted the Respondents' motion for summary judgment when it determined that Petitioner has no right to exclusive control of the right of way.  However, to the extent the circuit court relied upon findings of abandonment and laches to reach that result, those determinations are erroneous and unnecessary to the outcome of this case.

Accordingly, the circuit court's order is affirmed.

Affirmed.

**ISSUED:**  November 13, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White