# CHARLESTON

## BEVERLIN *v*. CASTO.

### Submitted January 29, 1907.    Decided April 25, 1907.

1. APPEAL—*Decisions Reviewable—Nature of Subject Matter—Title to Real Property.*

    A decree adjudging, ordering and decreeing that the plaintiff do take and hold the land mentioned and described in the bill for and during his natural life, and referring the cause to a commissioner to take and report an account of rents, issues and profits, taxes and permanent improvements made on the property, pronounced on a bill, demanding rents, issues and profits, as well as title and possession of the land, is appealable as one changing title to real estate. (p. 160.)

2. DEEDS—*Construction—Reservations—Operation of Reservation.*

    The following clause in a deed, executed by a husband and wife to their son, and construed in this case: "The parties of the first part do hereby reserve a life time dower and support of *one* the above land set *joint* in this deed," secures to the grantors their maintenance and support for and during their lives, but, under it, they have no estate in the land or any portion thereof. (p. 162.)

3. SAME—*General Rules—Recitals.*

    A clause near the beginning of such deed, reciting the payment of one dollar as consideration and saying other considerations will be set forth in the deed, discloses intent to make the reservation clause part of the consideration, there being no other provision in the deed for the benefit of the grantors. (p. 162.)

4. SAME—*Construction Affecting Validity.*

    A deed will not be so construed as to render it a nullity as to any of the parties thereto, if, by any reasonable construction, such result can be avoided. All of its parts must be considered and all its provisions made effective, if possible. (p. 162.)

5. HUSBAND AND WIFE—*Marriage Settlements—Validity—Postnuptial Settlements.*

    A wife's *inchoate* right of dower constitutes a sufficient consideration for a post-nuptial settlement, made by her husband, and also for a covenant, on the part of the grantee in her deed, to maintain and support her. (p. 163.)

Appeal from Circuit Court, Jackson County.

Action by P. E. Beverlin against F. S. Casto. From a decree in favor of plaintiff, defendant appeals.

*Reversed. Remanded.*

ELMER L. STONE, W. P. KERWOOD and WARREN MILLER, for appellant.

R. E. HUGHES and W. H. O'BRIEN, for appellee.

POFFENBARGER, JUDGE:

P. E. Beverlin, widow of Granville Beverlin, obtained a decree of the circuit court of Jackson county, against F. S. Casto, adjudging her to be the owner of an estate for life in a tract of land, containing 77 acres, three roods and 29 poles, which had been conveyed by her husband and herself to their son, W. A. Beverlin, by deed dated June 2, 1897, and which the said W. A. Beverlin had granted to Casto by his deed, dated the 17th day of March, 1902. The bill and decree thereon are based upon the following clause in said deed of June 2, 1896: "The parties of the first part do hereby reserve a life time dower and support of *one* the above land set *joint* in this deed." In her original bill, the plaintiff claimed, under this clause, a life estate in one-third of the land and prayed for partition. But in an amended and supplemental bill she asserted claim to a life estate in the whole tract, together with the right to recover rents, issues and profits of the land from the 17th day of March, 1902. After the court had overruled his demurrers to the original and amended bills, the defendant answered, denying title in the plaintiff to any estate whatever in any portion of the land, and set forth the following facts for grounds of estoppel as to any right or interest which she might have in respect to said land under and by virtue of said reservation clause: Granville Beverlin, the husband of the plaintiff, had been a surety along with J. M. Stone, S. W. Stone, G. W. Sayre, Jr., and Warren Miller on the bond of P. M. Stone as deputy sheriff under I. M. Adams, the sheriff of Jackson county. Said P. M. Stone having defaulted, Adams had recovered two judgments against all of the sureties except Granville Beverlin, who had died prior to the institution of the actions in which they were recovered. Beverlin had also conveyed all of his real estate, in separate tracts, to his four children, W. A. Beverlin, Delia Posey, Purlina Good and Emerson H. Beverlin. The answer alleges all of these deeds were made with intent to hinder, defraud and delay the creditors of the grantor and especially the said Adams and

Beverlin's co-sureties. Sometime after the recovery of the two judgements, the sureties against whom they were taken, made a demand upon the grantees of Beverlin for contribution and it was agreed that they should pay $500.00, of which sum $160.00 was to be paid by W. A. Beverlin. To this agreement, the bill alleges W. A. Beverlin, P. E. Beverlin, the widow and plaintiff in these bills, and the defendant Casto were made parties, and the agreement is alleged to have been part and parcel of the contract of purchase between Casto and W. A. Beverlin. The purchase price of the land was $500.00 and Casto paid $160.00 on account thereof to the sureties or Adams and the balance to W. A. Beverlin, and thereby satisfied the demand of the sureties against that tract of land, as well as his obligation for purchase money. It is further averred that the plaintiff, by reason of said compromise and adjustment, saved to herself and to her infant son, Emerson H. Beverlin, the tract of 74 acres, one rood and 13 poles, which had been so conveyed to him and on which she had resided with her said son. Estoppel by acquiescence for the period of more than three years is also relied upon. An additional ground is set up in the averment that the plaintiff had advised and encouraged her son, W. A. Beverlin, in the prosecution of an action of ejectment against S. M. Shamblin and the heir of J. F. O'Brien for the recovery of said tract of land, contrary to his conveyance thereof to said Shamblin and J. F. O'Brien, made while he was an infant. The answer does not pray any affirmative relief, but it was treated by the plaintiff as an answer in the nature of a cross bill, and so much of it as sets up matter of estoppel was demurred to, and the court sustained the demurrer and struck out that portion of the answer, together with the exhibits therewith filed, consisting of copies of the deeds executed by Granville Beverlin and his wife, to Purlina Good, Emerson H. Beverlin and Delia Posey, and copies of the declaration and final order in the action of ejectment.

That portion of the decree which is relied upon as appealable reads as follows: "And the Court, construing the deed which is filed with plaintiff's said original and supplemental bills marked exhibit 'A,' is of opinion that the plaintiff is entitled, thereunder, to a life estate in and to the tract of 77

acrés, 3 roods and 29 poles of land, described in said bill and amended and supplemental bill, and by metes and bounds described in said exhibit 'A,' therewith filed, and that said plaintiff, P. E. Beverlin, do take and hold said land for and during her natural life, all of which is by the court accordingly so adjudged, ordered and decreed." Following this is an order of reference to a commissioner to ascertain and report the rents, issues and profits of the land from the 17th day of March, 1902, and the amount of taxes paid on it and the value of all the permanent improvements made thereon since the date of said deed.

Anticipating the possibility of a doubt as to whether the decree is appealable, counsel for the appellant insist in their brief that it is sufficiently broad to cover all the issues raised as well as to settle and determine the principles of the cause. The lack of any adjudication as to the rents, issues and profits is obvious, and the rule, allowing an appeal from a decree as one adjudicating the principles of a cause, requires a settlement of all the issues. There is no decree for rents, issues and profits. An intention to decree for them is evinced by the reference for their ascertainment, but the expression of a mere intention to render a decree does not amount to an adjudication. *Hill* v. *Cronan*, 56 W. Va. 174; *Ross* v. *Armstrong*, 54 W. Va. 16. If it be true that the recovery of rents, issues and profits is incidental or sequential, necessarily and directly resulting from the adjudication of title in the plaintiff, and amounts to no more than mere execution of the decree as to title, the want of a decree therefor is immaterial. Whether this view of counsel is tenable, we do not consume time in determining, since the decree is appealable as one changing the title to real estate. The seventh clause of section 4038 of the Code of 1906 allows an appeal "in any case in chancery wherein there is a decree * * * requiring real estate to be sold or the possession or title of the property to be changed." One of the two matters put in issue by the bill and answer is the title to a freehold estate in the land. The defendant is in possession claiming the fee simple title and the plaintiff sets up in her bill title to a life estate therein. The court, by its decree, has determined, adjudged, ordered and decreed that she is entitled to it and that she do take and hold said land for and during her natural life.

The action of the court in overruling the demurrer to the original and amended bills is assigned as error, and the argument to sustain this position is predicated upon the adequacy of the remedy at law, whether the measure of relief to the plaintiff be the recovery of one-third of the land as claimed in the original bill, or the whole thereof as claimed in the amended bill. In either case, ejectment would lie and be an appropriate and adequate remedy, but the bill contains a prayer for general relief, and would afford any other relief, not obtainable in a court of law, to which the plaintiff may be entitled. Hence the proposition that ejectment lies for the recovery of the land does not fully respond to the issue. The deed, constituting part of the bill, may confer upon the plaintiff the right to maintenance and support, as to which ejectment would not be an appropriate remedy.

As the deed is exhibited with, and made part of, the bill, the construction of the clause upon which the plaintiff relies is raised by the demurrer; and the general rule requiring all parts of the deed to be considered and effect, as far as may be, to be given to all its parts, in seeking the intention of the parties thereto, must govern. The plaintiff, as the wife of the grantor, joined in the deed. She was a party to it. She was named in it as one of the grantors and signed and acknowledged it. But for the reservation clause, its effect under the statute would be the relinquishment of her then *inchoate* right of dower. Code 1906, section 3079. The reservation clause says there is reserved to the parties of the first part a life time dower and support in the land. Under the rule that words may be, and, under certain conditions, should be, taken and applied distributively, it might be said that the intention was to reserve to the wife her dower and to the husband a life support, *Building Ass'n* v. *Sohn*, 54 W. Va. 101, (pt. 9 syl.); but this would make the deed stand as to the wife, precisely as if she had not joined in it. As to her, the reservation would then wholly defeat the deed. Such construction would violate the cardinal rule that all parts of a deed must be considered and effect given to them. On the other hand, to say, that no provision at all for the wife was intended, would nullify and defeat the purpose intended to be effectuated by the reservation clause. The necessity of finding a middle ground, a mean between the

two extremes, if possible, is obvious.    The intention to be-
stow some benefit upon the wife has been expressed in the
deed.    At the time it was executed, she had no estate in the
land, nothing out of which a reservation could be made.    All
the interest she had was an *inchoate* right of dower which
constituted no estate in the land.    *George* v. *Hess*, 48 W.
Va. 534; *Thorn* v. *Sprouse*, 39 W. Va. 706.    This right she
released.    To hold otherwise is to deny any effect whatever
to her deed.    It constituted a good consideration for a post-
nuptial settlement by her husband, and, to the extent of its
value, he could provide for her out of his estate, even though
in doing so he intended the exclusion of his creditors.    *Glass-
cock* v. *Brandon*, 35 W. Va. 84; *Burwell* v. *Lumsden*, 24
Grat. 443; *Harvey* v. *Alexander*, 1 Rand. 213; *Quarles* v.
*Lacy*, 4 Munf. 251; *College* v. *Powell*, 12 Grat. 372; *Davis*
v. *Davis*, 25 Grat. 587.    It would also constitute a valuable
consideration for a covenant on the part of the grantee in the
deed in her favor, as for her support and maintenance for
the balance of her life or for such period, within the dura-
tion of her life, as the parties might agree upon.    The theory
of an intention to reserve, or stipulate for, maintenance and
support of the grantors, if adopted, as the true meaning of
the deed, would harmonize with the rules of interpretation
and construction to which reference has been made.    In the
absence of any language or provision in the deed, be-
yond those to which attention has been directed, the adoption
of this theory might be necessary, in order to give effect to
said rules.    However, there is language in the deed which
seems clearly to indicate an intention to provide for mainte-
nance and support.    Though the grantee was the son of the
grantor, the conveyance seems not to have been made in
consideration of love and affection, nor to have been volun-
tary.    The clause relating to consideration reads as follows:
"For and in consideration of the sum of one dollar cash in
hand paid the receipt hereby acknowledged and other con-
siderations which will be set forth in this deed."    Nothing
appears in the deed in favor of the grantors except the clause
under consideration.    Clearly that was intended as the other
consideration—something moving from the grantee to the
grantors—something to be done by him for their benefit.    If we
say the wife reserved her dower, she simply retained what she

had previously owned and it could constitute no considera-
tion moving from the grantee to her; and, if the husband re-
served out of the land belonging to him a life estate, the
same conclusion, as to whether any consideration thereby
moved to him from the grantee, would be inevitable.   Ob-
viously, therefore, the true meaning of the deed is that the
grantors were to have their maintenance and support from
the land for and during their natural lives.

Against this view, two decisions, *Myers* v. *Cullum*, 152
Ind. 700, and *Rollins* v. *Davis*, 23 S. E. 392, holding clauses,
in some respects similar to the one here under consideration
and containing the word "support," to have given the grant-
ors life estates instead of mere rights of maintenance and
support.   These decisions are only persuasive authority, not
binding upon this Court.   The former follows other decisions
of the Indiana court and seems to regard the term "sup-
port" as the equivalent of the words "estate for life."   It
quotes approvingly from *Stout* v. *Dunning*, 72 Ind. 343, as
follows:   "He could not have his support off the land with-
out the use and occupation of it.   The right to such support
from the land involves the use and occupation, as without
the use and occupation he could not derive his support from
it."   The fallacy of this argument must be plainly apparent.
There are many instances in which this Court has held the
contrary.   We have had before us several deeds in which the
right to support was recognized and dealt with as a thing
separate and distinct from the title to the land upon which it
was charged.   What other provisions the deed under con-
sideration in that case contained, or what facts were dis-
closed by its recitals, are not set forth in the opinion.   In the
latter case, the deed was peculiar in its terms and provisions.
The grantor conveyed the tract of land to his children and
the *habendum* clause reads as follows:   "To have and to hold
said land and property mentioned above to the said   *   *   *
their heirs and assigns, together with all and singular the
rights, members and appurtenances to the same in any man-
ner belonging to their own proper use, benefit and behoof
the said children, after the support of Daniel C. Turner
and Nancy A. Turner their life time."   Nancy A. Turner,
his wife, did not join in the deed.   The court said it was the
clear intention of the grantor, shown by the terms used, to

reserve a life estate, and the want of any consideration other than natural love and affection is adverted to as an important circumstance. The words "to have and to hold" after "support" of the grantors "their life time" are also adverted to in the opinion as disclosing such intention. The court said "the support was to be for 'their life time' and the children were not 'to have and to hold' until after that time; that is to say until after the termination of that period." The difference between the terms used in that deed and those used in the deed here involved is as marked and radical as it is obvious. Hence, the case is not in point at all.

As the bill does not set up any lien or aver any covenant for support, nor in way deny that the plaintiff has had and is reserving her support, the demurrer should have been sustained. It fails to disclose any such title or right in the plaintiff as she demands, and lacks some of the allegations necessary to a sufficient bill for relief in respect to the right of support and maintenance.

It is to be observed here that we have found it unnecessary to carry our inquiry into the matters set up in the answer. Our conclusion and decision, as to the nature and extent of the right secured by the reservation clause, is predicated solely upon the bill, which, as indicated by the answer, may not develop all the facts and circumstances, necessary to be considered, should a sufficient bill for the vindication of that right be hereafter filed.

For the reasons given, the decree will be reversed, the demurrer to the bill sustained and the cause remanded, with leave to the plaintiff to amend her bill, if she desires to do so, and with directions to dismiss the same in case she should fail to amend it.

*Reversed. Remanded.*

BRANNON, JUDGE, (*dissenting*):

I cannot join in holding that a life estate is not reserved by the intent of the deed. It provides no means of support. It puts no obligation on the grantee to provide a support. It contains no lien on the land. It does not contain the common clause of forfeiture for non-support. It seems the parties did not look to or rely on such usual provisions for assurance of support, leading us to the fair inference that

they supposed that the grantors could take rents and profits for support, in other words, believed they had reserved a life estate. No forfeiture or other remedy is provided for support, and we may reasonably say that some guaranty for it was intended. If the deed had contained a stipulation for support, we might say that failure would call for cancellation, as in *Wilfong* v. *Johnson*, 41 W. Va. 283. The clumsy deed does plainly reserve a life time support out of the land. I think this gave right to take rents and profits, and the right to rents and profits for life or forever creates a life estate or fee. This life estate is the most efficacious guaranty for support contemplated by the deed. Is it not the *prima facie* remedy, unless the deed negatives it? It seems to me that this deed contemplated that the grantor and wife should have the fruits direct from the soil for support. Though the wife has only contingent dower, her husband could reserve out of the fee a life estate for both her and himself. JUDGE POFFENBARGER cites no authority to support him, but declines to follow two cases of respectable authority in Indiana and Georgia, going against his holding. My claim is, that if the construction of the deed is doubtful, we should give it that construction affording the most ample and ready assurance of a support; that is give title and possession for life that from the land the bread of life would be insured. Do not compel the grantors to relinquish title without this, the plain security. JUDGE POFFENBARGER makes them yield the surest guaranty, and gives them a law suit to enforce their rights, a tedious suit to cancel the deed. In *Bolling* v. *Bolling*, 5 Munford 334, a will gave a wife a life estate in certain land, and gave another person land, and directed that the wife "should be furnished during life, out of his whole estate, with whatever provision and necessaries of every kind she may have occasion for, to support herself and family." Here was a life estate, given in words, and the court, though not finding it necessary to so decide, said that "the impressions of the court" were that the widow had under the will a *strict* right, as a life estate, to take the whole profits of *all* the land. The court thought that the widow had a life estate in not only the land devised to her for life, but also in the land devised to another devisee. The will in that case only provided that the wife be "*furnished*" necessaries for support, where-

as the deed in the present case reserves a support directly out of the land, and does not provide that the grantee shall furnish support, but looks to the land, because the support comes out of it, leading us to say that it contemplated possession by the widow. How else than by taking rents and profits could she certainly get support? This is a plainer case for a life estate than the Virginia case just cited.