# CHARLESTON

VIRGIE BREWER v. YELLOW POPLAR LUMBER COMPANY

(No. 5375)

Submitted October 21, 1925. Decided November 3, 1925.

EASEMENTS—*Description in Grant of Right of Way Admitting of Two Constructions Will Generally be Construed Most Favorably to Grantee.*

Where the description in a grant of a right-of-way admits of two constructions, it will generally be construed most favorably to the grantee.

(Easements, 19 C. J. § 94.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Mingo County.

Suit by Virgie Brewer against the Yellow Poplar Lumber Company for an injunction. From a decree for plaintiff, defendant appeals.

*Judgment reversed.*

*Goodykoontz & Slaven* and *Chlide Nelms,* for appellant.
*Bias & Chafin* and *Ira J. Partlow,* for appellee.

HATCHER, JUDGE:

In the year 1904 C. H. Spaulding owned 150 acres in Mingo county. H. C. Closterman was the owner of an adjoining tract of 3920 acres of what is commonly termed "back land". The description of the division line between these tracts as contained in the deed to Spaulding is: "Commencing at a stake near the bank of the Old House Branch of Jenny's Creek, thence up said creek on the left hand side to the upper end to a rock and beech, thence with the division lines to the top of the hill at the gap of Marlowe Creek". This line is about 270 poles in length and was well-established, at the date of the deed, from the Old House Branch to the beech, which is 170 poles from the beginning corner. The remaining 100 poles of the line were in dispute between Spaulding and Closterman. The controversy was settled amicably. The division line was mutually established and Spaulding granted Closterman a right of way across the Spaulding tract. Spaulding executed a deed to Closterman containing the calls of the division line as agreed upon and also a description of the right of way. The location of this right of way is the *causus belli* of this proceeding. As much of the deed from Spaulding to Closterman as is pertinent in this case follows:

"—the said parties hereto agree and bind themselves, that the following lines shall be and is hereby constituted the division line between the real estate owned by each of said parties, hereto on Jenny's Creek—said line to be as follows:

Beginning at a beech to the said Closterman survey and running S. 22 50′ E. 452 feet to a 30-

inch beech by a rock on the bank of Jenny's
Creek; thence S. 53 E. 410 feet to an oak by a
rock opposite the mouth of Gap Branch; thence
across the creek and up Lick Branch S. 14 25′ E.
877 feet to a stake on the side of a birch and pop-
lar, corner to said Closterman's survey;

The said parties of the first part, their heirs and
assigns do hereby grant and bargain to the said
party of the second part, his heirs and assigns for-
ever, the full and complete right of ingress and
egress over and through any of the lands owned
by them from the Gap Branch and the beginning
beech corner to the other end of the division line,
for the purpose of removing timber, coal and other
minerals, and for all other lawful purposes."

The plaintiff in this action, Virgie Brewer, is now owner by
mesne conveyances of 135 acres of the Spaulding tract. The
defendant, the Yellow Poplar Lumber Co., is the grantee of
the Closterman title. The plaintiff sought to stop the de-
fendant by injunction from building on her land a tramroad
from the beech corner down Jenny's Creek to the Old House
Branch. The tramroad is for the purpose of removing timber
from the Closterman land. From a decree of the circuit
court of Mingo county in plaintiff's favor, the case is here
on appeal.

Jenny's Creek enters the Spaulding tract from the Closter-
man lands at the oak and rock corner. It then flows entirely
through the lower two-thirds of the Spaulding tract, parallel-
ing the division line and a few poles therefrom. The Jenny's
Creek valley is very narrow and from the beech corner down
the creek the level land is on the Spaulding tract. On the
Closterman side of the division line a hill rises that is so rocky
and precipitous as to make railroad building thereon economi-
cally impracticable if not prohibitive. A competent witness
testified that in view of the topography of the two tracts the
only practicable way to market the timber and minerals of
the Closterman land was to bring them down Jenny's Creek
over the Spaulding tract. Gap Branch flows across the upper
portion of the Spaulding tract, and empties into Jenny's

Creek at the 30 inch beech corner, instead of at the beginning beech corner as stated in the above deed.

The plaintiff contends that the right of way granted Closterman extends across only about one third of the Spaulding tract and should be located between Gap Branch and the beginning beech corner as one terminal, and the birch and poplar corner at the end of the Lick Branch call as the other terminal. The defendant contends that the right of way gives it an outlet across the Spaulding tract and extends from Gap Branch and the beginning beech corner down Jenny's Creek to the end of the division line at the Old House Branch. The plaintiff would apply the right of way to only so much of the division line as had been in dispute. The defendant would apply it to Gap Branch and to that part of the division line which was never in dispute. The plaintiff would have the right of way go *up* the creek from the beginning beech corner to the upper end of the division line; the defendant would have it go *down* Jenny's Creek from Gap Branch and the beginning beech corner, to the opposite end of the division line. So the narrow question here is, *which end of the division line* is referred to in the Spaulding deed? Closterman needed a right of way entirely across Spaulding's land, in order to economically remove his timber and minerals. A right of way across the upper one third of the Spaulding tract with no rights over the other two thirds would have been of no practical use to Closterman. Spaulding, with full understanding of Closterman's needs, apparently met them with the generous phrases in which he described the right of way.

There are certain well-established canons of construction applicable to deeds. One is that in construeing a deed, "effect should be accorded the intention of the parties appearing from the instrument as a whole." *Napier* v. *Coal Co.* 97 W. Va. 247. The intention of Spaulding as expressed in his deed was to grant to Closterman "the full and complete right" for the removal of timber, etc. This intent is not reflected in plaintiff's construction, which would render that right incomplete. Another canon of construction is that if a deed be susceptible of two interpretations, one of which would render it ineffec-

tive and the other effective, it will be presumed in law that the parties in making the contract did not intend to do a vain thing, and it will be so construed as to render it operative. *Higgins* v. *Coal Co.* 63 W. Va. 218.

> "A deed will not be so construed as to render it a nullity as to any of the parties thereto, if, by any reasonable construction, such result can be avoided. All of its parts must be considered and all its provisions made effective, if possible."
> *Beverlin* v. *Casto*, 62 W. Va. 158.

If, as plaintiff contends, the Closterman right of way extends across merely the upper one third of the Spaulding tract, then the Spaulding grant is ineffective and futile for the purpose expressed in the deed, i. e., the *removal* of the timber, etc. Another rule is that a deed is to be construed most strongly against the grantor, and where the language of the deed is ambiguous, it will be given an interpretation most favorable to the grantee. 18 C. J. 263 par. 9, 8 R. C. L. 1051 par. 104. *Lumber Co.* v. *Sheets*, 75 W. Va. 21.

> "A deed is construed most strongly against the grantor and in favor of the grantee. This rule has been called one of the most just and sound principles of the law because the grantor selects his own language. If therefore, the deed can inure in different ways, the grantee, it is said, may take it in such way as will be most to his advantage."
> *Elterich* v. *Real Estate Co.* 130 Va. 224.

If we follow these canons of construction, if we presume that Spaulding did not intend to grant an ineffective right of way, if we give effect to Spaulding's expressed intention to grant a full and complete right, if we give to the deed the construction most favorable to the defendant, then there can be no question of the validity of the defendant's claim, and so we hold.

In one of the mesne conveyances to Virgie Brewer, all damages which might accrue to the Spaulding land by the removal of the Closterman timber were reserved, or attempted to be

reserved, to Messer and Meade, the grantors in that particular conveyance. By reason of that so-called reservation it is contended by defendant that the plaintiff had no right in the first place to institute this suit. A plethora of hypotheses is submitted by counsel for plaintiff as to the legal character of this reservation and in support of the contention that it is invalid. Viewing the easement as we do, we deem it unnecessary to thread our way through a maze of distinctions between exceptions, reservations, and covenants, in an attempt to classify and determine the validity of the reservation. No improper use of the right of way is alleged or proven, and no damages for a proper use thereof by defendant arises in favor of anyone.

The injunction awarded in this cause is therefore dissolved, the judgment of the circuit court reversed and the cause remanded.

*Judgment reversed.*