483 S.E.2d 826

Roberta MEADOWS and Tara Sue Morgan, Plaintiffs Below, Appellees,

v.

Wade BELKNAP and Gary Cogar, Defendants Below, Appellees,

and

Carma PERRINE, Plaintiff Below, Appellant,

v.

Roberta L. MEADOWS and Tara Sue Morgan, Defendants Below, Appellees.

No. 23534.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 29, 1997.

Decided Feb. 21, 1997.

Richard A. Facemire, Sutton, for Appellant.

George M. Cooper, Sutton, for Appellees Roberta Meadows and Tara Sue Morgan.

Bernard R. Mauser, Sutton, for Appellees Wade Belknap and Gary Cogar.

DAVIS, Justice:.

This appeal was prosecuted by Carma Perrine, appellant/plaintiff below, (hereinafter referred to as "Mrs. Perrine"), from an order of the Circuit Court of Braxton County denying her request to permanently enjoin her daughters Roberta L. Meadows and Tara

Sue Morgan, appellees/defendants below, (hereinafter referred to as "the daughters"), from interfering with her use of certain real property.[1] The circuit court's order found that Mrs. Perrine's interest in the property was limited to dower and that she could not invade the corpus of the property. The circuit court ruled that Mrs. Perrine could not create waste or remove timber therefrom without the consent of the daughters. Mrs. Perrine alleges that it was error for the circuit court to deny her injunctive relief, limit her interest in the property to dower and find that she could not unilaterally dispose of timber on the property. We agree and reverse.

## I.

### FACTUAL BACKGROUND

The facts of this case are traced to Mrs. Perrine's marriage to Derstine Perrine. Mrs. Perrine and Mr. Perrine were wed on August 3, 1942. During their marriage Mr. Perrine purchased, by deed in his name alone, five tracts of land situate in Otter District, Braxton County.[2] On October 12, 1989, Mr. Perrine and Mrs. Perrine signed a deed conveying the five tracts of land to the daughters. The deed conveying the property to the daughters specifically reserved a life estate in the property to Mr. Perrine and Mrs. Perrine. Additionally, the deed reserved the right of Mr. Perrine and Mrs. Perrine to dispose of any timber on the property and to retain proceeds therefrom. On November 22, 1991, Mr. Perrine died testate. Several years after Mr. Perrine's death Mrs. Perrine, on November 8, 1994, executed a contract with Wade Belknap,

wherein she sold to Mr. Belknap certain timber on the five tracts of land. Thereafter, on November 22, 1994, the daughters filed a petition for preliminary injunction with the circuit court seeking to enjoin Belknap and Gary Cogar from removing timber from the land.[3] The circuit court issued a temporary injunction against Belknap and Cogar on November 22 and, after a hearing held on November 29, continued the preliminary injunction pending further deliberation by the court.

On December 9, 1994, Mrs. Perrine filed a complaint, sounding in equity and law, against the daughters.[4] In her complaint Mrs. Perrine asked that the court enjoin the daughters from interfering with her right to dispose of timber on the five tracts of land. The complaint also requested damages for economic losses sustained by Mrs. Perrine as a result of the daughters' interference with her timber rights. On January 4, 1995, the circuit court entered an agreed order consolidating Mrs. Perrine's action against the daughters and the daughters' action against Belknap and Cogar. Thereafter on April 19, 1995, the circuit court, without holding a hearing, entered an order in the consolidated cases. The court ruled that (1) Mrs. Perrine had only a dower interest in the five tracts of land, (2) Mrs. Perrine could not invade the corpus of the property, create waste or remove timber therefrom without consent of the daughters, (3) Mrs. Perrine was not entitled to an injunction against the daughters, and (4) that Belknap and Cogar were permanently enjoined from removing timber from the land.[5] Mrs. Perrine filed a motion for reconsideration and a hearing was held on May 26, 1995. On June 19, 1995, the circuit

---

1. This appeal arises from a final order rendered in two cases that the circuit court consolidated for disposition. Mrs. Perrine's case below was Civil Action No. 94–C–87. The second case below was filed by the daughters against Wade Belknap and Gary Cogar, under Civil Action No. 94–C–84. Belknap and Cogar have filed a brief in the instant proceeding. Although Belknap and Cogar are listed in the style of this case as appellees, their position in this matter is consistent with Mrs. Perrine's position.

2. The record indicates that the home of Mrs. Perrine and Mr. Perrine is on the property.

3. The record does not explain Cogar's role in this matter.

4. The record indicates that Mrs. Perrine filed, along with her complaint, a separate motion seeking temporary injunctive relief against the daughters.

5. The record is not clear, but it appears that the circuit court issued its order based upon the motion tendered by Mrs. Perrine with her complaint, and its prior decision to deliberate further on the question of whether to issue a permanent injunction against Belknap and Cogar.

court entered an order denying the motion for reconsideration and reaffirmed its previous order. Mrs. Perrine filed this appeal. While there are numerous issues in this appeal, the central question for this Court is whether Mrs. Perrine has only a dower interest in the five tracts of land.[6] As we fully set out below, Mrs. Perrine's interest in the property is greater than that of a dower.

## II.

### STANDARD OF REVIEW

■ We begin our analysis by first establishing the appropriate standard of review. The core of this appeal is Mrs. Perrine's challenge to the circuit court's findings of fact and conclusions of law which served as predicates for the denial of her request for injunctive relief. In reviewing the exceptions to the findings of fact and conclusions of law supporting the denial of a preliminary injunction, we apply a three-pronged deferential standard of review. Syllabus point 1, *McGraw v. Imperial Marketing*, 196 W.Va. 346, 472 S.E.2d 792 (1996). First, we review the final order denying the temporary injunction and the ultimate disposition under an abuse of discretion standard. *West v. National Mines Corp.*, 168 W.Va. 578, 590, 285 S.E.2d 670, 678 (1981). Second, we review the circuit court's underlying factual findings under a clearly erroneous standard. Syllabus point 1, *G Corp. v. MackJo, Inc.*, 195 W.Va. 752, 466 S.E.2d 820 (1995). Third, we review questions of law de novo. Syllabus point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

■ The task we embark upon requires this Court to examine pertinent language in a deed to ascertain the intent of its parties. This Court has developed some basic principles for analyzing instruments of conveyance. As we pointed out in *Orlandi v. Miller*, 192 W.Va. 144, 148, 451 S.E.2d 445, 449 (1994), "[t]he law is rather clear in this State that where there is ambiguity in a deed, it is appropriate that it be construed." *Citing, Hall v. Hartley*, 146 W.Va. 328, 119 S.E.2d 759 (1961); *Bennett v. Smith*, 136 W.Va. 903, 69 S.E.2d 42 (1952); *Meadow River Lumber*

*Company v. Smith*, 126 W.Va. 847, 30 S.E.2d 392 (1944); *Paxton v. Benedum–Trees Oil Co.*, 80 W.Va. 187, 94 S.E. 472 (1917). As a general rule, ambiguities in a deed are to be clarified by resort to the intention of the parties ascertained from the deed itself, the circumstances surrounding its execution, as well as the subject matter and the parties' situation at that time. 23 Am.Jur.2d Deeds § 221 (1983). *See Brown v. Crozer Coal & Land Co.*, 144 W.Va. 296, 107 S.E.2d 777 (1959); *Oresta v. Romano Brothers, Inc.*, 137 W.Va. 633, 73 S.E.2d 622 (1952); *Ramage v. South Penn Oil Co.*, 94 W.Va. 81, 118 S.E. 162 (1923). It becomes incumbent then for this Court to place itself in the situation of the parties, as near as may be, to determine the meaning and intent of the language employed in the deed. *Phillips v. Fox*, 193 W.Va. 657, 458 S.E.2d 327 (1995). *See Grill v. West Virginia R.R. Maintenance Auth.*, 188 W.Va. 284, 423 S.E.2d 893 (1992). It was noted in syllabus point 2 of *McDonough Co. v. E.I. DuPont DeNemours & Co., Inc.*, 167 W.Va. 611, 280 S.E.2d 246 (1981) that "[d]eed reservations are strictly construed against a grantor and in favor of a grantee." However, in *Donahue v. Bills*, 172 W.Va. 354, 355, 305 S.E.2d 311, 312 (1983) we cited our decision in *West Virginia Department of Highways v. Farmer*, 159 W.Va. 823, 226 S.E.2d 717, 719 (1976), wherein it was said that " '[i]t has long been held that where language in a deed is unambiguous there is no need for construction and it is the duty of the court to give to every word its usual meaning.' " *Quoting*, 5 M.J., Deeds, § 66 (*citing, Burdette v. Bruen*, 118 W.Va. 624, 191 S.E. 360 (1937)); *Tate v. United Fuel Gas Co.*, 137 W.Va. 272, 71 S.E.2d 65 (1952). We said further in *Fox Grocery Co. v. University Foods, Inc.*, 181 W.Va. 206, 208, 382 S.E.2d 43, 45 (1989) " '[a] fundamental rule of law is that a court, in deciding disputes about the meaning of a contract, deed, or will, will endeavor to carry into effect the intent of the parties to the agreement, seeking first to ascertain such intent from the instrument itself.' " *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617, 618–19 (1981). In ascertaining the intent from the instrument, the language of the agreement must be afforded its 'plain

---

**6.** Belknap and Cogar did not petition for appeal in this case. *See* note 1, *supra.*

and ordinary meaning' without resort to judicial construction." *Citing,* Syl. pt. 4, *Williams v. South Penn Oil Co.,* 52 W.Va. 181, 43 S.E. 214 (1903), *overruled on another point, Ramage v. South Penn Oil Co., supra; Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962). "Parties are bound by general and ordinary meanings of words used in deeds." Syl. pt. 1, *McDonough Co., supra.* With the above principles in view we turn to the task at hand.

## III.

## DISCUSSION

■■■■■■ The circuit court found that the 1992, legislative changes in the law of wills, dower, descent and distribution are not applicable in this case. *See,* Acts 1992, c. 75. We agree. This Court held in *Oresta v. Romano Brothers, Inc.,* 137 W.Va. at 644, 73 S.E.2d at 628, that "a deed will be interpreted and construed as of the date of its execution." *(Citations omitted). See also, Morgan v. Mayes,* 170 W.Va. 687, 689, 296 S.E.2d 34, 36 (1982)("The basic rule established [is] that the controlling statute is the one in effect at the date of death of the person through whom inheritance is claimed"); *King v. Rif-*

---

7. We articulated the meaning of fee simple in *Yeager v. Town of Fairmont,* 43 W.Va. 259, 261, 27 S.E. 234, 234 (1897) as " 'a freehold estate of inheritance, free from conditions and of indefinite duration. It is the highest estate known to the law, and is absolute, so far as it is possible for one to possess an absolute right of property in lands." *Quoting,* Tied, *Real Prop.* § 36. *See also, Seifert v. Sanders,* 178 W.Va. 214, 217, 358 S.E.2d 775, 778 (1987) ("The phrase 'entire property' has been utilized by this Court to more precisely define what constitutes a fee simple estate") *(citation omitted ).*

8. Dower is a right that is given by law and not arising from the mere marriage contract of the parties. *Thorn v. Sprouse,* 39 W.Va. 706, 20 S.E. 676 (1894). The right to dower was expressed in W.Va.Code § 43–1–1 (1923) (abolished by Acts 1992, c. 75) as follows: "A surviving spouse shall be endowed of one third of all the real estate whereof the deceased spouse ... was, at any time during the coverture, seised of[.]" The word "dower" describes actual ownership or vested interest in property that occurs after the death of a spouse. *Lazzell v. Lazzell,* 118 W.Va. 154, 189 S.E. 91 (1936). Until the death of the spouse seised of property, the dower of his or her spouse is inchoate. *Minner v. Minner,* 84 W.Va.

---

*fee,* 172 W.Va. 586, 590, 309 S.E.2d 85, 89 (1983) ("If we were now to hold that a statute on [property distribution] not in force and effect at the time of the death of ancestors controls the descent of real property, long settled titles to real property might be called into question and opportunities presented for the making of great mischief"); Syllabus pt. 5, *Arnold v. Turek,* 185 W.Va. 400, 407 S.E.2d 706 (1991) ("Statutory changes in the manner and method of distributing the proceeds of a judgment or settlement for wrongful death will not be given retroactive effect, and the statute in effect on the date of the decedent's death will control"). The record in this case is clear. Under the applicable law that was in place on the date that Mr. Perrine and Mrs. Perrine conveyed the five tracts of land to the daughters, Mr. Perrine had a vested fee simple interest in the property [7] and Mrs. Perrine had only an inchoate dower interest.[8] On October 12, 1989, Mr. Perrine and Mrs. Perrine conveyed a deed to the daughters which gave the daughters a vested remainder in fee simple subject to their life estates.[9] The reservation clause in the deed provided as follows: [10]

The first parties herein [Derstine and Carma Perrine] hereby retain the free life-

---

679, 100 S.E. 509 (1919). Upon the death of the spouse seised of property, the surviving spouse's right to dower becomes consummate. *Darnell v. Flynn,* 69 W.Va. 146, 71 S.E. 16 (1911). However, until actual assignment of the dower, the surviving spouse has merely a vested right, not an estate, for which he or she may file a suit seeking to set aside one third of the real estate his or her spouse was seised of. It is only upon such assignment that the surviving spouse acquires a vested estate in the assigned portion of the deceased spouse's land for the balance of his or her life. *Haskell v. Sutton,* 53 W.Va. 206, 44 S.E. 533 (1903). *See,* W.Va.Code § 43–1–12 (1923) (repealed by Acts 1992, c. 75), where it was said that: "Dower may be assigned as at common law; or upon the motion of the surviving spouse[.]"

9. "A vested remainder is created when a present interest in property passes to a certain and definite person which is to be enjoyed in the future." *Kanawha Banking & Trust Co. v. Alderson,* 129 W.Va. 510, 516, 40 S.E.2d 881, 885 (1946). *(Citations omitted.)*

10. We have defined a deed reservation as " 'something arising out of the thing granted, not then in *esse,* or some new thing created or re-

time usage of all said tracts or parcels of land for and during the lifetime of each of them, with the right to use any timber thereon for farm purposes' and with the specific right to sell any timber on said tracts of land in which event the first parties herein shall receive all the proceeds therefrom as their own property, and the first parties herein, hereby retain all rental and royalties on any minerals to said tracts of land and they shall receive the proceeds thereof as their own personal property for and during the lifetime of each of them[.] [11]

■ The circuit court determined that the above reservation in the deed did nothing more than provide Mr. Perrine with a life estate in the property, along with the rights therein set out.[12] The circuit court found that because Mrs. Perrine only had an inchoate dower in the property, she could not reserve a life estate for herself in the deed. It was further determined by the court that Mr. Perrine did not grant a life estate to Mrs. Perrine. Therefore, the court concluded that the only interest Mrs. Perrine had in the property, upon the death of Mr. Perrine, was that of dower. We disagree with the circuit court's factual and legal analysis and the legal conclusion reached therefrom.

## A.

### The Intent Of Mr. Perrine

■ The first issue we must address was stated by this Court in *Stephenson v.*

*Kuntz,* 131 W.Va. 599, 612, 49 S.E.2d 235, 242 (1948):

One of the fundamental rules to be followed, in construing a deed or will, is that a court will endeavor to carry into effect the intent of the parties thereto, seeking first to ascertain such intent from the instrument itself, but, where the same is ambiguous, permitting a resort to parol explanatory evidence of the circumstances in which the instrument was executed. The intention of the parties should always govern ... and where the intent is apparent, and is not repugnant to some rule of law, it should prevail over mere technical terms.

See *Totten v. Pocahontas Coal & Coke Co.,* 67 W.Va. 639, 642, 68 S.E. 373, 374 (1910) ("[T]he polar star that should guide us in the construction of deeds ... is, what was the intention of the party or parties making the instrument, and when this is determined, to give effect thereto, unless to do so would violate some rule of property"); Syl. pt. 3, *Trager v. Chapman,* 100 W.Va. 413, 130 S.E. 660 (1925) ("In construing deeds ... the purpose is to ascertain the intention of the parties, and when the intention is thus ascertained it will be effectuated, unless it contravenes some principle of law"). The reservation clause *unambiguously* reveals that the intent of Mr. Perrine was that of creating a life estate in the property for himself and for Mrs. Perrine. We stated succinctly and without verbosity in syllabus point 2 of *Trag-*

---

served, issuing or coming out of the thing granted, and not a part of the thing itself, nor of anything issuing out of another thing.' " *Malamphy v. Potomac Edison Co.,* 140 W.Va. 269, 273, 83 S.E.2d 755, 758 (1954), *quoting, Tate v. United Fuel Gas Co.,* 137 W.Va. 272, 71 S.E.2d 65 (1952) (emphasis in original). In other words, if a deed conveying a fee simple contains a clause by the grantor which states that the grantor retains a life interest in the property, this amounts to a reservation of an estate for life to the grantor. *See, Hurst v. Hurst,* 7 W.Va. 289 (1874).

11. The actual deed was not made a part of the record on appeal. Mrs. Perrine's brief cites the actual deed as an exhibit, but the deed was not attached to the brief. The record also revealed that Mrs. Perrine cited to the deed in her complaint. However, the deed was not attached to the complaint. We said in syllabus point 3 of *Heydinger v. Adkins,* 178 W.Va. 463, 360 S.E.2d

240 (1987) that " '[w]hen the record in an action or suit is such that an appellate court can not in justice determine the judgment that should be finally rendered, the case should be remanded to the trial court for further development.' Syl. pt. 2, *South Side Lumber Co. v. Stone Construction Co.,* 151 W.Va. 439, 152 S.E.2d 721 (1967)." In the instant proceeding we are able to fairly and justly determine matters, even though the deed was not provided with the record on appeal.

12. "A life estate is a possessory estate of freehold in the real estate in which a vested remainder exists, and while the life estate continues the right to possession of the realty is in the life tenant. Present enjoyment is the very essence of a life estate. The tenant of an estate for life in real estate has the right to the full enjoyment and use of the land and its profits during the continuance of the life estate." *Kanawha Banking & Trust Co. v. Alderson,* 129 W.Va. at 517, 40 S.E.2d at 885. (Citations omitted.)

er v. Chapman, that "[n]o particular words are necessary to create a life estate; any language in the conveyance, which sufficiently shows the grantor's intention will suffice." The words in the aforementioned deed reservation provide in plain and ordinary terms that a life estate was intended to be created for both Mr. Perrine and Mrs. Perrine. This Court has been steadfast in holding "that the words of an agreement should be given their natural and ordinary meaning, because the parties presumably used the words in the sense in which they were generally understood." Bennett v. Dove, 166 W.Va. at 774, 277 S.E.2d at 619. See Syl. pt. 4, Williams v. South Penn Oil Co., overruled on another point, (where we held that "[i]t is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning").

■ As holder of a fee simple in the property, Mr. Perrine had every right to reserve for himself and grant to Mrs. Perrine a life estate in the property. We pointed out in syllabus point 1 of Avery v. Moore, 150 W.Va. 136, 144 S.E.2d 434 (1965), that "[u]nder Section 11, Article 1, Chapter 36, 1931, when any real estate is conveyed to any person, and no words of limitation are used in the conveyance such conveyance operates to pass the fee simple or the whole estate or interest, legal or equitable, which the grantor had power to dispose of in such real property unless a contrary intention appears in such conveyance." Mr. Perrine inserted "words of limitation" in the deed. He did not "pass the fee simple" carte blanche. His intent was that of holding onto and reserving a life estate for himself and Mrs. Perrine.

## B.

### The Effect Of Mrs. Perrine Joining Conveyance

■ It is equally clear to this Court that Mrs. Perrine relinquished her inchoate dower, with its mere one third life interest in the property, in exchange for the full use of and a life estate in all of the property.[13] We are aided in this conclusion by W.Va.Code § 48–3–4 (1923). The latter statute provides in relevant part:

When a ... wife joins with ... her spouse in a deed or other writing purporting to convey any real estate of such spouse, such deed or other writing, when delivered, shall operate to pass or convey from such ... wife ... her right of dower[.]

The legal effect of Mrs. Perrine joining Mr. Perrine in conveying the property to the daughters, as a vested remainder in fee simple subject to their life estates, was the relinquishment of her right of dower. See W.Va. Code § 43–1–1 (abolished by Acts 1992, c. 75) (wherein the right of dower was created and bestowed upon a surviving spouse "unless the right of such surviving spouse to such dower shall have been lawfully barred or relinquished"). The circuit court's conclusion that Mrs. Perrine retained her dower interest in the property is legally incorrect because of the operation of W.Va.Code § 48–3–4 on the conveyance. Mrs. Perrine would have no rights or interest whatsoever in the property were we to agree with the circuit court's conclusion. This was not the intent of Mr. Perrine and Mrs. Perrine when they jointly conveyed the property to the daughters as a vested remainder in fee simple subject to their life estates. We pointed out in syllabus point 1 of Cotiga Development Co., supra, that "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties" to a deed.

The circuit court's reasoning in this case has destroyed the essence of the intent of the parties. Nothing in the record suggests that

---

**13.** Mrs. Perrine's interest in the property as dower was far less than the interest obtained by the deed. Under dower Mrs. Perrine could only take and appropriate for her use the issue and profits of the real estate assigned to her. She could not destroy or remove the corpus thereof because that belonged to the next vested estate in remainder. See Minner v. Minner, supra. Further, under dower Mrs. Perrine would be precluded from removing timber from the property assigned to her, except for use as firewood in her home. See Casto v. Kintzel, 27 W.Va. 750 (1886). On the other hand, under the terms of the life estate conveyed to her in the deed, Mrs. Perrine was given possession of all of the property. Further, under the deed she could remove any and all of the timber from anywhere on the property.

Mr. Perrine intended Mrs. Perrine be left homeless if he preceded her in death. Mr. Perrine stated in plain language that he was "retain[ing] the free lifetime usage of all said tracts or parcels of land for and during the lifetime" of himself and Mrs. Perrine. Moreover, we are persuaded that the conduct of the daughters manifested their understanding that Mr. Perrine conveyed Mrs. Perrine a life estate in the property. From the date of Mr. Perrine's death on November 22, 1991, to November 22, 1994, the date the daughters filed their suit to enjoin Belknap and Cogar, the daughters did not interfere with Mrs. Perrine's use of the property. We are not moved by the daughters' contention that the timbering authorized by Mrs. Perrine would denude the property. Mr. Perrine specifically set out in the deed that during his lifetime and the lifetime of Mrs. Perrine, each of them retained "the right to use any timber thereon for farm purposes and with the specific right to sell any timber on said tracts[.]" The clarity of the latter passage denudes the argument raised by the daughters. The daughters had no right to interfere with Mrs. Perrine's sale of any or all of the timber on the property. The very words of the deed foreclosed such interference.

### C.

### *Creating Life Estate In Reservation Clause*

The daughters also contend that a grant of a life estate by Mr. Perrine to Mrs. Perrine could not be effectuated in the reservation clause of the deed.[14] This argument is without merit. We are not disturbed by the informality of the deed's textual placement and creation of Mrs. Perrine's life estate. Our task is not to find a technicality that would support the improbable. Ours is a task of discerning the intent of the parties to the deed at the time of its making. *See Sally–Mike Properties v. Yokum*, 175 W.Va. 296, 299, 332 S.E.2d 597, 600 (1985) ("[T]he manifest intent of the parties supersedes the commonly ignored technical differences between a 'reservation' and an 'exception'"). We are satisfied that we have discerned the intent of the parties. However, we address the arguments raised by both sides on the issue of creating a life estate in the reservation clause.

As authority for their contention that Mr. Perrine could not convey a life estate to Mrs. Perrine in the reservation clause of the deed, the daughters' brief cites the case of *Field v. Morris*, 88 Ark. 148, 114 S.W. 206 (1908). *Field* is factually distinguishable to this case. *Field* did not involve the creation of a life estate.[15] The court in *Field* reasoned, as we have in the instant proceeding, that dower may be relinquished when a spouse joins in the conveyance of property. The *Field* court only decided that the husband's personal right to use the property could not be conveyed and died with him.

The brief of the daughters cite our decision in *Beverlin v. Casto*, 62 W.Va. 158, 57 S.E. 411 (1907), as support for their argument that a life estate to Mrs. Perrine could not be

---

14. Our case law has been definitive in holding that " '[a] reservation to a stranger to the instrument is void for all purposes.' " *Erwin v. Bethlehem Steel Corp.*, 134 W.Va. 900, 909, 62 S.E.2d 337, 343 (1950), *quoting, Beckley National Exchange Bank v. Lilly*, 116 W.Va. 608, 182 S.E. 767 (1935). *See Collins v. Stalnaker*, 131 W.Va. 543, 48 S.E.2d 430 (1948); *Gwinn v. Gwinn*, 77 W.Va. 281, 87 S.E. 371 (1915); *McDougal v. Musgrave*, 46 W.Va. 509, 33 S.E. 281 (1899). Mrs. Perrine was not a stranger to the deed or property in question.

15. In *Field* the husband, Mr. Darter, owned property in his name alone. Mrs. Darter joined her husband in selling the property to W.A. Townsend, with a reservation that they have rent free use of one and a half acres of the land sold for as long as they wanted. Townsend's land purchase changed hands several times before it

finally rested with Laura C. Field. In the meantime, Mr. Darter purported to sell the one and a half acre interest in the property to J.W. Morris. (Mr. Darter died shortly thereafter.) Morris moved onto the property and Field filed suit to have him removed. Regarding the conveyance by the Darters to Townsend, the *Field* court said: "Was the right to use [one and a half] acres appendant or appurtenant to land, or was it personal? If personal, it was not assignable or inheritable." *Field*, 88 Ark. at 150, 114 S.W. at 207. The court concluded that the right retained by the Darters was personal. "It is exclusively to Darter and his wife, was personal, and died with Darter; his wife having had only the right of dower in the land and joined with him in executing the deed for the purpose of relinquishing dower." *Id.*, 88 Ark. at 152, 114 S.W. at 208.

created in the reservation clause of the deed. *Beverlin* supports this Court's analysis of this case.[16]

In *Beverlin,* we interpreted the ambiguous reservation clause as creating for Mrs. Beverlin a lifetime trust in the proceeds from the land for her maintenance and support. We came to that conclusion after nullifying from the deed, as superfluous, the term dower. To the extent that *Beverlin* approved of a lifetime trust in the proceeds of property being created in a reservation clause for a spouse who relinquished the right of dower, we see no inconsistency in permitting a life estate to be created in a reservation clause for a spouse who has relinquished the right of dower.

Mrs. Perrine's brief cites our decision in *McDonald v. Jarvis,* 64 W.Va. 62, 60 S.E. 990 (1908) as standing for the proposition that a grantor may create a life estate for a grantee in a reservation clause. The *McDonald* case is also supportive for the decision we have reached in the instant case.[17] The facts of *McDonald* illustrate that Caleb Jarvis owned a tract of land which he conveyed by deed to his son and daughter-in-law. However, he reserved a life estate for himself and his wife, Sarah. Sometime after Caleb and his son died, Sarah lost the use of her mental faculties. A committee was appointed for Sarah. The property in question was being taken care of by the daughter-in-law. The committee, acting on behalf of Sarah, was able to obtain a judgment against the daughter-in-law from a circuit court, which gave Sarah the right to dispose of the property. On appeal the issue of whether Sarah could actu-ally be granted a life estate in the reservation clause was not presented. The opinion *assumed the validity of the conveyance* because it was not contested. We went on to uphold Sarah's life estate, but reversed the circuit court's decision that she could alienate the property.

Mrs. Perrine also cites our decision in *Kanawha Banking & Trust Co., supra,* as direct support of her position. That case concerned certified questions regarding whether or not property conveyed by deed, as a vested remainder in fee simple subject to two life estates, was subject to an inheritance tax under the laws of this State.

Mrs. Perrine contends that *Kanawha Banking & Trust Co.* is on all fours with the facts of her case. We agree with Mrs. Perrine that the nature of the conveyance made in *Kanawha Banking & Trust Co.* is indistinguishable from the type of conveyance made in the instant proceeding. However, similarities between the two cases end on the issue of nature of conveyance. In *Kanawha Banking & Trust Co.* we were not asked to decide whether a husband could create a life estate for his wife in the reservation clause of the deed. The opinion *assumed the validity of the conveyance* because it was not contested.

■ While the authorities cited by Mrs. Perrine and the daughters did not confront the precise issue being argued here, we are satisfied that none of the authorities cited preclude a husband or wife from creating a life estate, for a spouse holding an inchoate dower, in the reservation clause of a deed.

---

16. The relevant facts of *Beverlin* reveal that Mr. Beverlin owned real property in which his wife had an inchoate dower interest. The couple executed a deed conveying the property to their son. The reservation clause in the deed "reserved to the parties of the first part a lifetime dower and support in the land." *Beverlin,* 62 W.Va. at 162, 57 S.E. at 413. Mr. Beverlin died sometime after making the conveyance. The Beverlins' son eventually conveyed the property to the defendant, Casto. Mrs. Beverlin filed a suit seeking, initially, a one third life estate in the property. She subsequently amended her complaint and demanded a life estate in all of the property based upon the deed. The circuit court granted judgment to Mrs. Beverlin, adjudging her owner of a life estate in all of the property based upon the reservation clause of the deed. The defen-dant appealed to this Court. We noted on appeal that it was not necessary for Mrs. Beverlin to join in the conveyance, if the intent was to preserve her dower interest in the property. Because of this, we ultimately concluded that she relinquished her right of dower when she agreed to the conveyance by her husband. "Obviously, therefore, the true meaning of the deed is that the grantors were to have their maintenance and support from the land and during their natural lives." *Id.,* 62 W.Va. at 164, 57 S.E. at 414.

17. In *McDonald* this Court affirmed the lower court's decision that a party could be granted a life estate in the reservation clause. The opinion assumed the validity of the conveyance because it was not contested.

## IV.

## CONCLUSION

Based upon the foregoing analysis we are moved to conclude that the circuit court committed error in its disposition of this case. Mrs. Perrine's interest in the five tracts of land does not spring from dower. Mrs. Perrine relinquished her right of dower when she joined Mr. Perrine in conveying the property to the daughters as a vested remainder in fee simple subject to their life estates. Mrs. Perrine has a life estate in the five tracts of land and all rights reserved to her by the deed. Therefore, Mrs. Perrine is entitled to have the daughters permanently enjoined from interfering with her disposal of timber on the property.[18] We note that Mrs. Perrine's complaint also sounded a legal claim for damages arising from conduct by the daughters in interfering with her timber rights. Because the circuit court did not reach the legal claim prior to dismissing this matter, it is necessary to remand this case for the purpose of litigating the legal claim.[19] Therefore we reverse the circuit court's order dismissing this case and remand the same for disposition consistent with this opinion.

Reversed and Remanded.

---

18. We held in syllabus point 7 of *Jefferson County Bd. of Educ. v. Jefferson County Educ. Ass'n*, 183 W.Va. 15, 393 S.E.2d 653 (1990) that " ' "[t]he granting or refusal of an injunction, whether mandatory or preventive, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award or denial of the writ." Point 4, syllabus, *State ex rel. Donley v. Baker*, 112 W.Va. 263 [164 S.E. 154 (1932) ].' Syllabus Point 2, *Severt v. Beckley Coals, Inc.*, 153 W.Va. 600, 170 S.E.2d 577 (1969)."

Our ruling herein necessarily affects and nullifies the permanent injunction imposed upon Belknap and Cogar by the circuit court.

19. We stated in *Tate v. United Fuel Gas Co.*, 137 W.Va. at 279, 71 S.E.2d at 70, that "[a] court of equity, having properly taken jurisdiction of a suit for one or more purposes, may make full disposition of all questions involved, so as to afford complete relief and avoid a multiplicity of suits. This is true although some of the demands of the plaintiff are purely legal." (*Citations omitted*).